ETTA AVONDALE, APPELLANT, V. SOVEREIGN CAMP, WOODMEN OF THE WORLD, APPELLEE.
279 N. W. 355

FILED APRIL 29, 1938. No. 30259.

*Mossman, Anderson & Meissner, E. J. Petersen* and *McKenzie & Dugan,* for appellant.

*Rainey T. Wells, J. M. Sturdevant, George Yeager, John F. Futcher* and *Albert F. Wahl, contra.*

Heard before GOSS, C. J., DAY, PAINE, CARTER and MESSMORE, JJ., and LIGHTNER and SPEAR, District Judges.

LIGHTNER, District Judge.

Plaintiff seeks to recover $2,000 from defendant. At the close of the evidence both sides moved for a directed verdict. The district judge found for defendant, and under well-established rules in Nebraska his finding and judgment have the potency of a jury verdict. Plaintiff appeals.

The facts which give rise to the controversy are that defendant, which is a fraternal benefit society, issued an ordinary whole life certificate of $2,000 to Frank A. Avondale, who was then and for some time prior thereto had been a citizen and resident of Lake Charles, Louisiana, in which certificate and in the application therefor he named as his beneficiary "Edna Theodora Avondale, wife." Mr. Avondale died on August 1, 1931, and within a short time after his death the said Edna Theodora Avondale made due proof of his death and the entire amount of the certificate and interest, $2,006.59, was paid to her. The certificate naming Edna Theodora Avondale, the application and the proof were all in due form and gave in our judgment no notice to the defendant of the facts now about to be stated.

The evidence establishes that Edna Theodora was not the wife of Mr. Avondale at the time of his death, although a marriage ceremony had been performed between them December 30, 1917. The plaintiff was married to Mr. Avondale in 1908, and the evidence further establishes that no divorce was ever granted. The woman Edna knew at the time of her marriage to Mr. Avondale that he had a wife living from whom he was not divorced.

Further facts, which we consider of little importance, are that a benefit certificate was issued to Mr. Avondale on March 2, 1910, while he was living in Florida, in which he named the plaintiff, Etta Avondale, as beneficiary. This certificate was surrendered on June 10, 1918, and a new certificate was issued to Mr. Avondale, who was then living in Louisiana, in which the woman Edna was named as beneficiary. Later this was surrendered and on the 27th of April, 1929, an ordinary whole life certificate was issued to Mr. Avondale, who was still living in Louisiana, which

was in effect when he died. It named the woman Edna "wife" beneficiary and she made proof and received payment thereof as such. Since Mr. Avondale had the right to surrender these prior certificates and could at any time have ceased to be a member of the society by failing to pay the premiums, we feel that the plaintiff can base no rights upon the original certificate. Her rights, if she has any, must be founded upon the provisions of our statute (Comp. St. 1929, sec. 44-1207) and the provisions of the by-laws limiting the beneficiaries to certain named classes, of which the woman Edna was not one, and the holding of our court to the effect that where the designation of beneficiaries is void one in the lawful classes may recover the benefit. It further appears that Mr. Avondale left no children and that the plaintiff is the only person within the lawful classes competent to take the benefits.

It is insisted in the briefs and oral arguments that it was not conclusively shown that Mr. Avondale was not divorced from his first wife. While the proof as to this fact was unsatisfactory, we think that it was sufficiently shown that no divorce was ever granted.

Another defense was that the woman Edna, regardless of her doubtful marital status, was a dependent and entitled to take the insurance as such, a dependent being within the prescribed classes, and cases are cited to the effect that an unlawful wife may take as a dependent. We have examined these cases and find the rule to be that a woman who believed in good faith that she was married to the deceased can recover. But the evidence here shows that the woman Edna began keeping company with Mr. Avondale while she knew that he was married to the plaintiff; that she went to the depot when Mr. Avondale sent his lawful wife away to California; that there was a marriage ceremony performed soon afterwards between her and Mr. Avondale when she must have known that he was not divorced from the plaintiff. Under these circumstances, the authorities cited by defendant cannot be applied.

There are however other considerations which in our

judgment make it impossible for plaintiff to recover in this suit. One of the defenses interposed by defendant is that its by-laws provide that "no suit shall be brought upon this certificate, unless such suit is commenced within one year from the date of death." It is the law that this would not be a valid provision if the certificate in question was a Nebraska contract. *Miller v. State Ins. Co.*, 54 Neb. 121, 74 N. W. 416; *Omaha Fire Ins. Co. v. Drennan*, 56 Neb. 623, 77 N. W. 67; *Grand View Bldg. Ass'n v. Northern Assurance Co.*, 73 Neb. 149, 102 N. W. 246.

The evidence shows that defendant issued the certificate April 29, 1929, and sent it to the clerk of the local camp at Lake Charles, Louisiana. He delivered it to Mr. Avondale on May 3, 1929, who at said time paid the monthly instalment thereon and signed an acceptance thereof as follows: "I have read the above certificate and accept the same, and warrant that I am now in good health and have not been sick or injured since the date of my application."

The authorities are to the effect that the state in which the last act of a contract is performed is the situs of the contract. 45 C. J. 56; *McElroy v. Metropolitan Life Ins. Co.*, 84 Neb. 866, 122 N. W. 27.

It is further established by the evidence that such a contract provision is valid in Louisiana. *Deal v. Sovereign Camp, W. O. W.*, 161 So. (La. App.) 621; *Edson v. Merchants Mutual Ins. Co.*, 35 La. Ann. 353; *Carraway v. Merchants Mutual Ins. Co.*, 26 La. Ann. 298; *Clark v. Sovereign Camp, W. O. W.*, 8 La. App. 478; *Blanks v. Hibernia Ins. Co.*, 36 La. Ann. 599; *Williams v. Knights of Pythias*, 144 So. (La. App.) 754.

Mr. Avondale died on August 1, 1931, and the present suit was filed on the 6th day of October, 1934.

A refusal of a state court to recognize as valid a provision that suit must be commenced within one year after the date of loss, where such provision is valid under the law of the state wherein the contract was executed and was to be performed, is a denial of the rights guaranteed by the "due process clause" of the Fourteenth Amendment

to the federal Constitution, is a refusal to give full faith and credit to the law of a sister state as required by section 1, art. IV, and is a denial of the rights guaranteed under section 10, art. I, of the Constitution of the United States. *Home Ins. Co. v. Dick,* 281 U. S. 397; *Hartford Accident & Indemnity Co. v. Delta & Pine Land Co.,* 292 U. S. 143; *Aetna Life Ins. Co. v. Dunken,* 266 U. S. 389; *New York Life Ins. Co. v. Dodge,* 246 U. S. 357; *New York Life Ins. Co. v. Head,* 234 U. S. 149.

The appellant relies to some extent on section 44-320, Comp. St. 1929, which provides: "No insurance company shall issue in this state any policy or contract of insurance containing * * * any provision limiting the time within which an action may be brought to less than the regular period of time prescribed by the statutes of limitations of this state."

"The words 'issue,' 'issuance,' and 'issued,' in reference to an insurance policy, are used in different senses, sometimes as meaning the preparation and signing of the instrument by the officers of the company, as distinguished from its delivery to insured, and sometimes as meaning its delivery and acceptance. *Brix v. People's Mutual Life Ins. Co.,* 124 Cal. App. 65, 12 Pac. (2d) 108, 109." 2 Words & Phrases (4th ser.) 454.

However, we do not think that it is necessary to go into this question at any length because section 44-1208, Comp. St. 1929, provides: "Such societies shall be governed by this article (article 12, ch. 44) and shall be exempt from the provisions of the statutes of this state relative to life insurance policies." And this court has already held in *Masters v. Modern Woodmen of America,* 102 Neb. 672, 169 N. W. 1, that section 44-345, Comp. St. 1929, pertaining to attorney's fees was not applicable in suits against fraternal benefit societies by reason of the provisions of section 44-1208, Comp. St. 1929.

Appellant contends that even if section 44-320, Comp. St. 1929, does not apply the defendant could not write a contract of insurance in Louisiana that it was not per-

mitted to write in Nebraska, and relies on *Modern Woodmen of America v. Mixer*, 267 U. S. 544, and *Supreme Council, Royal Arcanum, v. Green*, 237 U. S. 531, L. R. A. 1916A, 771, and other cases to the same effect. These cases hold that a fraternal society is a brotherhood and that in order to put all the members on an equality the laws of the state of the domicile govern throughout its domain, but this rule only applies in our judgment to corporate matters such as the making of an assessment.

The cases cited in support of appellant's contention that defendant is not permitted to write a contract of insurance in Louisiana that it was not permitted to write in Nebraska hold that, in all matters governing fraternal associations such as the payment of dues and laws governing the society, the laws of the state in which the society was organized control. In *Supreme Council, Royal Arcanum, v. Green*, 237 U. S. 531, L. R. A. 1916A, 771, it was held that the Massachusetts laws under which said society was organized controlled as to the validity of an increase in the assessment against a member, rather than the New York law in which the member lived and wherein the policy had been delivered to him. Later, in a case that originated in Nebraska, *Modern Woodmen of America v. Mixer*, 267 U. S. 544, the supreme court of the United States held that a by-law which provided that "long continued absence of any member unheard of shall not * * * give any right to recover on any benefit certificate * * * until the full term of the member's expectancy of life, according to the National Fraternal Congress table of mortality, has expired * * * and this law shall be in full force and effect any statute of any state or country or rule of common law of any state or country notwithstanding," was binding in Nebraska, because it had been held binding in Illinois where the society was organized, although the local law of Nebraska permitted a suit after the unexplained absence of a member for 7 years. Judge Holmes wrote the opinion and states the gist of the matter in his usual succinct manner as follows: "The indivisible unity between the

members of a corporation of this kind in respect of the fund from which their rights are to be enforced and the consequence that their rights must be determined from a single law, is elaborated in *Supreme Council, Royal Arcanum, v. Green,* 237 U. S. 531, 542. The act of becoming a member is something more than a contract, it is entering into a complex and abiding relation, and as marriage looks to domicile, membership looks to and must be governed by the law of the state granting the incorporation. We need not consider what other states may refuse to do, but we deem it established that they cannot attach to membership rights against the company that are refused by the law of the domicile. It does not matter that the member joined in another state."

It seems manifest to us that in all matters above referred to fraternal societies must be governed by the same laws so as to put all members in the entire domain in which the society transacts business on an equal footing, but it seems equally manifest to us that such a uniform rule is not necessary in matters of procedure. The period of limitations in the various states vary, and no one would contend that the law of the domicile of the society would control so as to establish a uniform rule. The same would be true of all procedural matters. It seems to us that the same is true of contract limitations such as the one requiring suit to be brought within one year. The law of the state where the contract was entered into is the law that must govern, which in this case is the law of Louisiana where a contract limitation similar to the one in question had been held valid and enforceable.

There is in our judgment still another reason why plaintiff cannot recover in this suit. Plaintiff and Mr. Avondale separated in May, 1917, and she did not thereafter live with him. He sent her a little money after she left, but soon ceased to do that, and some time thereafter wrote to the plaintiff stating that he had obtained a divorce from her and had remarried. Plaintiff relied upon this information and on the 18th day of January, 1928, married one Ole Lysne, with whom she lived as wife for a certain length

of time, although it appears that this marriage was later annulled. It is the opinion of the court that plaintiff lost none of her rights by her marriage to Mr. Lysne, but she never lived with Mr. Avondale after the time she left him in May, 1917. She continued to live in California. She could easily have ascertained that Mr. Avondale's marriage to the woman Edna was bigamous. She apparently acquiesced in the relationship that existed between them and took no action in regard to the benefit certificate and gave no notice of any claim to defendant company until after it had paid the woman Edna the full amount of the certificate. The defendant had the right in our judgment to rely upon the proof that was furnished to it and to pay the amount of the certificate to the woman Edna. The beneficiaries of these certificates usually need the money represented by them immediately and we do not believe that it would be good public policy to lay down the rule that a protracted investigation has to be made where the proceedings are regular in form and where there is nothing to show that such investigation is necessary. While the plaintiff bore toward Mr. Avondale the legal status of wife, she had not lived with him or depended upon him for many years. She has no moral claim to the amount of the certificate. *Daniels v. Grand Lodge*, 62 S. W. (2d) (Tex. Civ. App.) 548; *Modern Woodmen of America v. Shattuck*, 266 S. W. (Tex. Civ. App.) 621; *Grand Lodge v. Harris*, 109 Miss. 173, 68 So. 75; *Metropolitan Life Ins. Co. v. Louisville Trust Co.*, 28 Ky. Law, 426, 89 S. W. 268; *Renick v. Mutual Life Assurance Co.*, 32 Ky. Law, 506, 106 S. W. 310.

Some of the cases hold that payment in good faith to the beneficiary named in the benefit certificate prevents a second recovery; that the remedy of claimant, if any, is against the person who wrongfully collects the certificate. In *Daniels v. Grand Lodge*, 62 S. W. (2d) (Tex. Civ. App.) 548, under like circumstances the court held: .

"We think the trial court correctly held that defendant, having acted in good faith upon the sworn statement of the insured and paid the amount of the insurance to the

beneficiary named by the insured and shown by the application to be legally entitled to receive the benefits of the certificate, cannot now be required to pay that amount to the plaintiff. If the defendant had been given any notice of Warner's want of any insurable interest in the life of the insured, the situation would of course be different, and the defendant would be liable to the plaintiff as the person legally entitled to the benefits of the certificate, but, in the absence of such notice, it cannot be held liable for the mistake or fraud of the insured in designating Warner as his nephew and having the policy made payable to him.

"Plaintiff's cause of action is against Warner and those who assisted him in wrongfully obtaining the benefits of the certificate."

Other cases seem to deny recovery unless the society has been guilty of negligence in making the payment.

The syllabus in *Grand Lodge v. Harris*, 68 So. 75 (109 Miss. 173) is as follows: "Where a colored order which issued a life policy payable to one named as the wife of the member paid the policy without notice that the named beneficiary was not the legal wife of the member, the legal wife cannot thereafter, the order having been guilty of no negligence, recover the amount of the policy."

In the opinion in the *Harris* case it is said:

"A great many court decisions are cited in support of the trial court's judgment. All these cases at all pertinent to the present case were cases wherein there was a contest between a person of the class eligible under the laws of the order to be made a beneficiary of death benefits and persons not so eligible, with the insurer or some other party acting as stakeholder. In all of these cases the courts enforced the laws of the order as the law of the case, and held that the legal beneficiary was entitled to the fund. No case has come to our attention wherein the facts are similar to the facts of this case.

"We do not understand that the laws of the Grand Lodge compel the lodge to pay to some one of the class mentioned as legal beneficiaries. The member of the lodge who

seeks insurance must name the beneficiary. If he names a beneficiary not entitled to share in the benefits conferred by the laws of the order, the Grand Lodge is not required to pay the sum to such named beneficiary. The Grand Lodge, in the present case, was not bound to pay the money to Katie, and if Mamie had propounded her claim before it had been paid to Katie, it may be conceded for the purposes of this case that in a contest between the rival claimants the courts would award the fund to the lawful widow. That is not the case here. The lodge paid the money to the person named in the policy, who, so far as the lodge knew or had reason to believe, was, as she represented herself, the widow of the deceased brother.

"We do not believe that the lodge was under any obligations to search the records of all the counties for the purpose of ascertaining whether or not the brother was the owner of more than one wife, or to demand of the claimant that she produce her marriage certificate."

In *Smiley v. Modern Woodmen of America*, 112 Neb. 10, 198 N. W. 157, Judge Rose said: "Of course, payment in good faith, without notice of a rival claim, to the person substituted by the by-laws for the original beneficiary would have prevented a recovery by plaintiffs in an action between them and the insurer, but that is not the case presented." However, in that case the person referred to by Judge Rose as substituted by the by-laws was the surviving wife of the insured and was eligible to take, whereas the woman Edna in this case was not eligible. Nevertheless, under the circumstances, the defendant having paid the certificate once is not required to pay it a second time.

The judgment of the district court is

AFFIRMED.