THE UNION LABOR LIFE INSURANCE
COMPANY *v.* PARMELY

[No. 77, September Term, 1973.]

*Decided October 31, 1973.*

The cause was argued before Murphy, C. J., and McWilliams, Singley, Smith, Digges and Levine, JJ.

*William H. Hicks,* with whom were *Niles, Barton & Wilmer* on the brief, for appellant.

*Abel J. Merrill,* with whom were *Merrill & Lilly, P.A.* on the brief, for appellee.

Levine, J., delivered the opinion of the Court.

This appeal is taken from a summary judgment granted

by the Circuit Court for Anne Arundel County (Melvin, J.) in favor of appellee. The dispute arises from an action at law brought by appellee (Francina), who claims to be the beneficiary under two group life insurance policies in which Clyde Parmely (Clyde) was enrolled as a member at the time of his death on September 24, 1972. Both sides filed motions for summary judgment, and clearly there is no genuine issue of material fact.

Francina and Clyde were married in the City of Baltimore on February 18, 1946. Apparently, Clyde took seriously the notion that "in married life three is company and two is none"; [1] in 1966, he also entered into a ceremonial marriage with one Dorothy Pearsall (Dorothy) in the City of Baltimore. Much to the chagrin of appellant, neither Clyde nor Francina ever took any steps to dissolve their marriage. For all we know—since the record is silent in this regard—neither Francina nor Dorothy knew of Clyde's marriage to the other.

On September 24, 1972, Clyde died of accidental gunshot wounds which were not self-inflicted. Prior to that date, although the record does not indicate when, he became enrolled in a group life insurance policy and a group accidental death policy which had been issued by appellant to the Construction Workers' Trust Fund. Since Clyde did not designate a beneficiary, under the terms of each policy the eligible beneficiary was his "widow." [2] Neither policy undertakes to define the term "widow."

Following Clyde's death, on November 1, 1972, appellant received from Dorothy a sworn statement of claim alleging that she was the wife and nearest relative of Clyde, together with a certification of their marriage and proof of his death. Thereafter, appellant employed a private investigator who merely confirmed the circumstances of Clyde's death. On November 13, 1972, appellant paid to Dorothy the sum of

---

1. Oscar Wilde, *The Importance of Being Earnest* (1895), 1.

2. " . . . *If there is no Beneficiary designated* by the Insured or surviving at the death of the Insured, payment will be made in a single sum to the first surviving class of the following classes of successive preference Beneficiaries: *The Insured's* (a) *widow.* . . ." (emphasis added).

$4,750 for life insurance benefits; and on December 6, 1972, a like sum for accidental death benefits. That appellant did so in good faith and without knowledge of Francina's existence is not challenged by her.

During the week of December 25, 1972, the "Life Claims Division" of appellant received notification by telephone from Francina's attorney that she was claiming the policy benefits. This was the first information received by appellant that Francina existed; it was followed by a letter dated January 2, 1973. The letter was accompanied by a copy of the first marriage license, the certification of which was dated September 26, 1972.

In this Court, appellant makes two arguments:

(1) That it was fully discharged from liability under the policies by making payment to Dorothy; and

(2) that since Francina requested certification of her marriage on September 26, 1972, only two days after Clyde's death, she is barred by estoppel because she did not make her claim until three months later. We find no merit in either contention, and accordingly shall affirm the judgment of the circuit court for the following reasons.

(1)

Appellant relies principally on two cases, *Weed v. Equitable Life Assurance Society of U.S.*, 288 F. 2d 463 (5th Cir. 1961), *cert. denied*, 368 U. S. 821, 82 S. Ct. 40, 7 L.Ed.2d 27 (1961) and *Avondale v. Sovereign Camp W.O.W.*, 134 Neb. 717, 279 N. W. 355 (1938), for its contention that it was effectively discharged upon making payment to Dorothy. *Avondale* involved a policy issued by a fraternal benefit society to one Frank Avondale. His designated beneficiary was "Edna Theodora Avondale, wife." Following his death, the insurer paid the policy benefits to Edna. It developed that their marriage was not valid as Frank had not been divorced from his prior wife. The latter brought suit against the insurer, but the court denied recovery.

In *Weed, supra,* the insurer issued policies in 1947 and 1948 to George Stevens who designated as beneficiary his

"wife, Louella H. Stevens." In 1951, he was adjudged insane and in 1952, he was adjudged sane. At that time, he effected a change of beneficiaries by naming his wife, Louella, as the primary beneficiary and their two children as contingent beneficiaries. In 1953, he was again adjudged insane; Louella divorced him in 1954, and he died in 1955. Equitable then paid the policy benefits to Louella, the divorced wife. In 1957, George's will, executed in 1952, was set aside on the ground that he lacked testamentary capacity. Four years after paying the proceeds, Equitable was sued by the two children, who were by then adults. Citing *Avondale, supra*, and other cases, the court affirmed the judgment for Equitable, stating that:

> "Payment in good faith to the beneficiary of record by the insurance company without knowledge of facts vitiating the claim will prevent a second recovery by another claimant. (citations omitted)." 288 F. 2d at 464.

Although appellant has seized upon these two cases as support for its contention here, we think they are materially different from the one at bar. Here, no beneficiary was designated by name, whereas in each of the cases cited above the insurer paid the policy proceeds to the person specifically designated by name. In the case at bar, the insurer was required to pay to the widow, but did not do so. A number of other cases involving factual situations similar to those in *Avondale* and *Weed, supra*, are collected in 2 Appleman, *Insurance Law and Practice*, § 803 (1966); *see Meinhardt v. Meinhardt*, 117 Md. 426, 83 A. 715 (1912).

The parties have not presented us with, nor have we found, a case presenting facts similar to those in the case at bar coupled with an insurance policy in which the beneficiary is designated by class rather than by name. Lacking case authority to support its position, appellant relies upon Maryland Code (1957, 1972 Repl. Vol.) Art. 48A, § 381, for a discharge from its insurance policies:

> "Whenever the proceeds of or payments under a

> life ... insurance policy ... become payable in accordance with the terms of such policy ... and the insurer makes payment thereof in accordance with the terms of the policy ..., *the person then designated* in the policy ... as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor, and such payments shall fully discharge the insurer from all claims under the policy ... unless, before payment is made, the insurer has received at its home office written by or on behalf of some other person that such other person claims to be entitled to such payment or some interest in the policy or contract." (emphasis added).

As the trial judge observed, it appears as though "the statute meets itself coming around the corner." In any event, the short answer to this argument is that Dorothy was not a "person ... designated in the policy." The statute is nothing more than an attempted codification of the rule applied in the cases cited earlier. As we have already intimated, had Dorothy been designated by name in the policies, appellant would have been discharged upon making payment to her, unless it had received prior notice of Francina's claim. In other words, since Dorothy had not been validly married to Clyde, she was not his "widow" under the policies. Hence, payment to her did not discharge appellant from its obligations. On the other hand, Francina, as the "widow," is entitled to payment.

(2)

The estoppel argument advanced by appellant is bottomed on the fragile theory that since Francina's marriage certification was dated September 26—two days after Clyde's death—she then knew of the policy but failed to present her claim for three months. Appellant maintains that she is therefore estopped from making her claim at such a late date because Dorothy had been paid by then.

This tenuous argument overlooks two simple points. First,

it does not follow that Francina knew of the policies on September 26 merely because she obtained a marriage certification on that date. Myriad reasons for ordering that document may have existed. Secondly, as we have already noted, the record is silent on whether Francina even knew of Dorothy's existence much less her purported marriage to Clyde. Where estoppel is founded upon silence, it cannot be invoked against a person who has no knowledge of the facts, *Rockville Fuel v. Gaithersburg*, 266 Md. 117, 135, 291 A. 2d 672 (1972); *see Mason v. Dulaney*, 144 Md. 108, 124 A. 390 (1923).

For these reasons, the summary judgment was properly granted.

> *Judgment affirmed; appellant to pay costs.*