Margaret CROSBY, Plaintiff–Appellee,

v.

Joan CROSBY, Defendant–Appellant,

General Motors Corporation; Metropolitan Life Insurance Company, Defendants–Appellees.

Margaret CROSBY, Plaintiff–Appellant,

v.

Joan CROSBY; General Motors Corporation; Metropolitan Life Insurance Company, Defendants–Appellees.

Nos. 92–1500, 92–1501.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 30, 1992.

Decided Feb. 17, 1993.

Michael Lawrence Marshall, Schlachman, Belsky & Weiner, P.A., Baltimore, MD, argued for appellant.

Richard Jay Hackerman, Baltimore, MD, Joseph Trovato, New York City, argued (A. Lawrence Giuliani, Baltimore, MD, for appellee Crosby; William J. Toppeta, New York City, for appellee Metropolitan Life; Dennis L. Casey, Paul, Hastings, Janofsky & Walker, Washington, DC, for appellee GM, on brief), for appellees.

Before WIDENER, PHILLIPS, and HAMILTON, Circuit Judges.

## OPINION

HAMILTON, Circuit Judge:

Joan Crosby (Joan) appeals the district court's summary judgment decision holding that Margaret Crosby (Margaret), rather than Joan, should receive the remaining insurance proceeds from the group life insurance plan on the life of Leonard Crosby (Leonard). Margaret cross-appeals the district court's summary judgment decision holding that she could not recover from Metropolitan Life Insurance Company (Met Life) or General Motors Corporation (GM) the proceeds previously paid to Joan under the same group life insurance plan.

We conclude that the district court properly determined that Margaret should receive all future life insurance proceeds and that neither Met Life nor GM should have to pay Margaret the amount already paid to Joan under this plan. We, therefore, affirm.

## I

Margaret married the decedent Leonard on December 10, 1961. Six months later they separated without obtaining a legal divorce. Thereafter, Margaret began living with Lee Andrew Williams and had three children by him. Margaret also changed the name on her social security card and her checking account to Williams, and titled her house in the name of Williams. Meanwhile, Leonard married Joan in January 1969. Leonard and Joan lived together until Leonard's death on January 29, 1990.

As an employee of GM, Leonard participated in a group life insurance plan underwritten by Met Life. The plan provided that, upon the employee's death, Survivor Income Benefit Insurance (SIBI) benefits would be paid to the "widow of a deceased male employee, but only if she was legally married to him at the time of his death and

had been legally married to him for at least one year." Joint Appendix (J.A.) at 104. Leonard designated Joan as his wife and beneficiary under this group life insurance plan.

Upon Leonard's death, Joan submitted a "Statement of Claim for Life Insurance Proceeds Under the General Motors Life and Disability Benefits Program," requesting that Met Life/GM pay the SIBI benefits to her.[1] As part of her claim, Joan submitted her marriage certificate acknowledging her marriage to Leonard. On the application for his license to marry Joan, Leonard had indicated he was single. Because Met Life/GM had no evidence to dispute Joan's legal status as Leonard's widow, Met Life/GM began paying SIBI benefits to Joan on March 13, 1990. Met Life/GM paid approximately $3,600 to Joan before receiving notice of Margaret's claim as Leonard's legal widow. Met Life/GM then escrowed all subsequent payments, taking the position of a stakeholder ready to pay whomever the court directed.

In September 1990, Margaret filed this action against Joan and Met Life/GM in the Circuit Court for Baltimore County, Maryland. Margaret sought a declaration that she was the legal widow of Leonard, thereby entitling her to all future SIBI benefits. In addition, Margaret claimed unjust enrichment against Joan, seeking to recover the SIBI payments already received by Joan. Joan responded that Margaret should be estopped from claiming both the prior and future benefits, alleging that Margaret knew of Joan's marriage years before Leonard's death, but did nothing to notify Joan of Margaret's existing marriage to Leonard.

Met Life/GM removed the case to the United States District Court for the District of Maryland on September 26, 1990. On August 1, 1991, the district court held that Margaret was the legal widow of Leonard Crosby and thereby awarded her all future SIBI benefits, 769 F.Supp. 197. However, the district court refused to hold

1. The claims against Met Life and GM are identical, and we shall, therefore, refer to both companies jointly.

Joan liable under an unjust enrichment theory for the SIBI benefits already received, reasoning that it was "[ ]equitable for [Joan] to retain the [$3,600]." J.A. at 209. The district court relied on the fact that Joan had lived with Leonard for twenty-two years, honestly believing that they were legally married, while Margaret had no contact whatsoever with Leonard for fifteen years before coming forward to claim the SIBI benefits.

After this ruling, Margaret amended her complaint against Met Life/GM in a second effort to recover the $3,600 in benefits paid to Joan. In her amended complaint, Margaret alleged unlawful payments against Met Life/GM because the policy required payments to be made to the legal widow of Leonard. On March 18, 1992, the district court awarded summary judgment in favor of Met Life/GM, concluding that Margaret had "superior knowledge" to Met Life/GM and was equitably estopped from asserting any claim against Met Life/GM for the SIBI benefits erroneously paid to Joan. J.A. at 293–94. The district court reasoned that, as early as January 1990, Margaret knew of Joan's purported marriage to Leonard and thus the potential for a competing claim to Leonard's estate assets. Nevertheless, the district court opined, Margaret waited eight months before filing this action to assert her marital rights to Leonard's estate, 785 F.Supp. 1227.

## II

On appeal, Joan contends that Margaret should be estopped from asserting any rights to future SIBI benefits. The district court rejected Joan's estoppel claim on two grounds. First, the district court reasoned that estoppel requires either a misrepresentation or silence despite a duty to speak and concluded that nothing in the present case required Margaret to inform Joan of her existing marriage to Leonard. Second, the district court observed that estoppel requires reliance by the injured party and concluded that in the present case Joan did not change her position to her detriment in reliance on Margaret's silence.

■ Joan challenges each of the district court's conclusions regarding her estoppel claim. First, she claims that a duty to speak arises whenever a party has greater knowledge of the relevant facts. Second, Joan claims that estoppel should apply whenever a party's silence precludes another from taking steps to protect herself from a loss. We disagree with both arguments. Maryland law imposes a duty to speak "only where the silence or inaction constitutes a fraud...." *Beesley v. Hanish*, 70 Md.App. 482, 521 A.2d 1235, 1243 (1987). *See also, Ganley v. G & W Limited Partnership*, 44 Md.App. 568, 409 A.2d 761, 766 (1980); *Jordan v. Morgan*, 252 Md. 122, 249 A.2d 124, 129 (1969). Because the record contains no evidence of fraud by Margaret, she had no duty to inform Joan of her existing marriage to Leonard. Thus, Margaret's silence does not estop her from asserting her right to the SIBI benefits even though she had greater knowledge than Joan and her silence may have prevented Joan from protecting herself.

■ Joan also contends that Margaret waived her marital rights in Leonard's estate. In support, Joan points to the fact that Margaret cohabitated with Lee Andrew Williams, had three children by him, changed the name on her social security card and her checking account to Williams, and titled her house in the name of Williams. This claim likewise fails. Although the facts might suggest that Margaret intended to waive her marital rights in Leonard's estate, this does not entitle Joan to the SIBI benefits. The group life insurance plan requires Met Life/GM to pay the benefits to Leonard's *legal widow*. Because Margaret is Leonard's legal widow, Joan has no entitlement to the proceeds under the plan, notwithstanding Joan's claim that Margaret waived these rights.

## III

In Margaret's cross-appeal, she claims that Met Life/GM should be liable to her for the $3,600 in SIBI benefits erroneously

paid to Joan.[2] Margaret bases her claim on two grounds. We disagree with both arguments and discuss our reasons for rejecting each argument separately.

## A

Margaret first argues that 29 U.S.C. § 1055(a) of the Employee Retirement Income Security Act (ERISA) requires Met Life/GM to pay the SIBI benefits to a "qualified beneficiary." Because the district court found Joan not to be the legal widow, any payments to her were not payments to a "qualified beneficiary" and therefore did not satisfy Met Life/GM's obligations under ERISA. We disagree.

■ Although ERISA requires benefits to be paid to a "qualified beneficiary," we do not think this principle requires Met Life/GM to pay Margaret the $3,600 already paid to Joan. When an administrator of an ERISA plan has discretion to determine eligibility for plan benefits, a court should review the determination of benefits eligibility under the abuse of discretion standard. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). This lenient standard applies when the administrator has "the '*power* to construe disputed or doubtful terms' or to resolve disputes over benefits eligibility." *De Sobel v. Vitro Corp.,* 885 F.2d 1180, 1187 (4th Cir. 1989) (quoting *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956). Under this standard of review, a court should not disturb the administrator's decision if reasonable. *De Sobel,* 885 F.2d at 1187.

■ In the present case, Met Life/GM had the power to determine Joan's eligibility to receive benefits by determining whether she was Leonard's legal widow. We believe that Met Life/GM's determination was reasonable in light of the documentation relied upon in making this determination—the marriage certificate and Leonard's designation of Joan as his wife and beneficiary. Therefore, we conclude that Met Life/GM did not abuse its discretion in determining Joan's entitlement to the SIBI benefits and that any payments to Joan satisfied Met Life/GM's obligations under ERISA up to the amount of those payments.

■ We also note an alternative ground for rejecting Margaret's claim. Under ERISA, federal courts may develop common law to grant "appropriate equitable relief." *U.S. Steel Mining Co. v. District 17, United Mine Workers,* 897 F.2d 149, 152 (4th Cir.1990). *See also, Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 156, 105 S.Ct. 3085, 3097, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring). This power to grant equitable relief compels us to adopt the widespread principle that an insurer is discharged from all subsequent liability when it makes good faith payments to a purported beneficiary without notice of any competing claims. *Rogers v. Unionmutual Stock Life Insurance Co.,* 782 F.2d 1214 (4th Cir.1986); *Weed v. Equitable Life Assurance Society of U.S.,* 288 F.2d 463, 464 (5th Cir.1961); *Commire v. Automobile Club of Michigan Ins. Group,* 454 N.W.2d 248, 249 (1990); *Kelly Health Care Inc. v. Prudential Ins. Co. of America, Inc.,* 226 Va. 376, 309 S.E.2d 305, 306 n. 1 (1983); *Harper v. Prudential Ins. Co. of America,* 233 Kan. 358, 662 P.2d 1264, 1273 (1983); *In re Estate of Thompson,* 99 Ill.App.3d 303, 55 Ill.Dec. 217, 426 N.E.2d 1 (1981). Such a rule minimizes the chances for imposing double liability for mistaken, but good faith payments to a purported beneficiary.

■ Applied to the present case, this principle dictates that Margaret's claim must fail. Met Life/GM exercised good faith in determining Joan's status as Leonard's legal widow and had no notice of Margaret's competing claim until after paying the $3,600 in SIBI benefits. At the time Met Life/GM made this determina-

---

**2.** Margaret originally indicated in her docketing statement that she intended to appeal the district court's conclusion that Joan was not liable to Margaret under an unjust enrichment theory for the $3,600 which Met Life/GM paid to Joan.

J.A. at 303. However, we believe Margaret abandoned this claim on appeal because her brief contains no argument on this issue and she did not raise this issue at oral argument.

tion, the only evidence available was Joan's presumptively valid marriage certificate and Leonard's designation of Joan as his wife and beneficiary. In light of these facts, Met Life/GM's acts were unquestionably in good faith, and thus the imposition of double liability on Met Life/GM is unwarranted.

## B

Margaret also contends that the district court's decision that Margaret was Leonard's legal widow indicates that any payments to Joan did not discharge Met Life/GM's obligations under the group life insurance plan. Margaret reasons that this plan required payments to go only to Leonard's legal widow. To support this argument, Margaret relies on *Union Labor Life Insurance Co. v. Parmely*, 270 Md. 146, 311 A.2d 24 (1973).

We conclude that these payments to Joan discharged Met Life/GM's obligations under the group life insurance plan and that the *Parmely* case is not controlling. In *Parmely*, the insurance policy in question required the insurance company to pay life insurance benefits to the decedent's "widow." Unfortunately, as in the instant matter, the decedent had married two women without obtaining a legal divorce. Neither the insurance company nor the two wives knew of the decedent's bigamy. After the decedent's death, the second wife submitted a claim for the life insurance proceeds together with her certificate of marriage. In good faith, the insurance company made several payments to the second wife. Then, the first wife filed suit against the insurance company, seeking to recover the amount erroneously paid to the second wife.

The Maryland Court of Special Appeals concluded that because the second wife was not the legal "widow," payments to her did not discharge the insurer's contractual obligations. In reaching this conclusion, the court distinguished policies requiring payment to beneficiaries designated by class, *e.g.*, the decedent's "widow," as op-

posed to beneficiaries designated by name. The court reasoned that only good faith payments under policies designating the beneficiaries by name could discharge an insurer's obligations. Thus, in *Parmely* the good faith payments to the second wife under the mistaken determination that she constituted the beneficiary class of "widow" did not discharge the insurer's contractual obligations.

However, *Parmely* was decided in 1973. One year later Congress enacted ERISA, intending to "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Thus, ERISA preempts any inconsistent state law. *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir.1989). Since ERISA applies to the group life insurance plan in the present case,[3] *Parmely* does not control because it conflicts with the ERISA principles discussed above. Specifically, the *Parmely* court's imposition of double liability on the insurer directly conflicts with the ERISA principles that: (1) a court should not disturb a plan administrator's discretionary determination of benefit eligibility when such a determination involved construing "disputed or doubtful terms," *De Sobel*, 885 F.2d at 1187; and (2) an insurer discharges its liability under an insurance policy by making good faith payments to a purported beneficiary without notice of any competing claims. *See, e.g., Rogers*, 782 F.2d at 1216. These principles developed under ERISA preempt the inconsistent result reached in *Parmely*. Accordingly, Margaret is not entitled to recover the $3,600 paid to Joan by Met Life/GM under the group life insurance plan.

## IV

For the reasons mentioned herein, we affirm the decision of the district court that Margaret should receive all future SIBI benefits, but that Margaret cannot recover

3. *See,* 29 U.S.C. § 1003(a)(1) ("this subchapter shall apply to any employee benefit plan if it is established or maintained by any employer engaged in commerce....").

from Met Life/GM the SIBI benefits already paid to Joan.

AFFIRMED.

WIDENER, Circuit Judge, concurring in part and dissenting in part:

I concur in all of the majority opinion except for part III(B), and as to that, I respectfully dissent. I suggest that it is contrary to logic to hold, as does the majority, that Margaret is entitled to all future benefits of the group life insurance policy because she is Leonard's "widow" while also holding that she is not entitled to the benefits already paid. Margaret, as the proper beneficiary, I think, is entitled to all policy benefits, both past and future.

The general law is that an insurer can only discharge its obligation by paying the person entitled to the proceeds of the insurance policy. See Appleman, *Insurance Law and Practice* § 1661. If a named beneficiary of a policy is described as the insured's wife and the insurer pays that beneficiary in good faith, then the insurer's obligation is discharged even if the insured's true wife later makes a claim upon the proceeds. See Appleman § 1661. However, if the beneficiary is described as the insured's widow, then the insurer can only discharge its obligation by paying the true widow of the insured. See *Union Labor Life Ins. Co. v. Parmely*, 270 Md. 146, 311 A.2d 24, 26 (1973); Appleman § 1661. If the insurer pays the wrong widow, the true widow may still recover from the insurer, and the insurer must bear the burden of recouping the wrongly paid proceeds. See *Parmely*, 311 A.2d at 26; Appleman § 1674.

There is no denying that *Parmely* is factually on point with the instant case in every respect, yet the majority does not find persuasive its holding because the majority claims that its result is inconsistent with principles developed under ERISA. The majority states, "(1) a court should not disturb a plan administrator's discretionary determination of benefit eligibility when such a determination involved construing 'disputed or doubtful terms,' and (2) an insurer discharges its liability under an insurance policy by making good faith payments to a purported beneficiary without notice of competing claims." Slip op. 8–9 (citations omitted). When applied to the facts of this case, I submit that reasoning does not withstand scrutiny.

First, I suggest that "widow" does not qualify as a disputed or doubtful term.[*] It was the duty of the insurance company to ascertain who was Crosby's widow; the fact that it erred in this determination does not convert widow into a disputed or doubtful term. Second, it is true that under general principles of insurance law an insurer may discharge in some circumstances its obligation by a good faith payment to a purported beneficiary. See Appleman § 1661. However, such a discharge occurs only under limited circumstances which are not present here. See Appleman § 1661. If Joan had been the named beneficiary under the policy and described as Crosby's wife, then the majority would be correct in holding that the insurer discharged its obligation by making a good faith payment to Joan. See *Rogers v. Unionmutual Stock Life Ins. Co.*, 782 F.2d 1214, 1217 n. 2 (4th Cir.1986) (distinguishing *Parmely* because beneficiary specifically designated by name); Appleman § 1661. However, Crosby's *widow* was the designated beneficiary of the policy, and a good faith payment to Joan does not discharge the insurer's obligation to Margaret. See *Parmely*, 311 A.2d at 26; Appleman § 1661. This too is a general principle of insurance law, and I suggest that since the majority relies on general principles of insurance law to support its holding, all of them which apply should be considered. This principle would require the reversal of the district court and the award to Margaret of all benefits wrongly paid to Joan.

Finally, I would add a note of caution. I find it quite disturbing that hardly a term passes in which a claimant under a group insurance policy for the benefit of employees has not had his claim turned down by

---

[*] widow—A woman who has lost her husband by death; the female survivor of a marital union.

Webster's New Collegiate Dictionary 978 (2d ed. 1956).

the insurance company on account of ERISA preemption. There is no doubt that under *general principles of insurance law* Margaret should recover in this case all of the payments, past and future. But by basing the outcome, at least in part, on the favorable discretion of the Plan Administrator, the insurer evades liability it would have had under the policy had the ERISA statutes never been enacted. It does not require much foresight to predict that a Plan Administrator which is also the insurer will exercise its discretion in favor of non-payment under the policy. That is the case here. In such cases, I would simply hold that a violation by a Plan Administrator of a clearly established legal principle is an abuse of discretion.