IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 27, 2001 Session

# IN RE: GUARDIANSHIP OF ASHLEY J. TATUM, A MINOR

**A Direct Appeal from the Probate Court for Shelby County**
**No. B-26297     The Honorable Robert L. Benham, Judge**

### No. W2001-00859-COA-R3-CV - Filed February 4, 2002

This case involves liability for misappropriation of funds in a guardianship estate. After a guardian was appointed by the probate court, Fidelity and Deposit Company of Maryland executed a guardianship bond as surety. The order appointing the guardian provided for the guardian's attorney to have joint control of the guardianship estate with the guardian. BellSouth Telecommunications, Inc. owed certain sums to the ward and was notified by the guardian's attorney of the joint control provision. The guardian's attorney also requested that the funds be sent to him to be deposited in the guardianship accounts. BellSouth ignored the request and sent the check payable to the guardian. Subsequently, the guardian misappropriated the funds, and the substitute guardian was awarded judgment against F & D. F & D filed a third party complaint against BellSouth for the sums so paid, and after a nonjury trial, the probate court entered judgment for F & D against BellSouth. BellSouth has appealed. We affirm.

### Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Earle J. Schwarz, Memphis, For Appellant, BellSouth

Michael G. McLaren; Vickie Hardy Jones, Memphis, For Appellee, Fidelity & Deposit Company of Maryland

### OPINION

On October 19, 1995, Rosalyn W. Felder, mother and natural guardian of Ashley J. Tatum, filed a petition in probate court to be appointed Tatum's general guardian. The petition recited that Tatum's father had died, leaving Tatum as the beneficiary of various benefits available from his employment with BellSouth Telecommunications, Inc. By order filed October 19, 1995, Felder was appointed general guardian, and the order provided in pertinent part: "(2) That the bond in this cause

is $210,000.00. Joint control is with Philip Cooper, Atty."[1] On this same date, Fidelity and Deposit Company of Maryland (F & D) executed the guardian bond in the amount of $210,000.00 as surety for the guardian.

By order filed February 18, 1998, the probate court removed Felder as guardian and appointed a substitute guardian. On August 2, 1999, the successor guardian filed a "Petition for Judgment Against Rosalyn W. Felder, Former Guardian of Ashley J. Tatum and Judgment Over Against F & D Bonding Company." The petition recited that Felder had converted funds for her own use that were paid to her as guardian by BellSouth. F & D filed an answer, cross-claim against Felder, and third party complaint against BellSouth. The third party complaint alleged that, because of the death of Tatum's father, certain monies became payable to Tatum from BellSouth. The third party complaint further alleges that Cooper, Felder's attorney, notified BellSouth that the order provided for joint control and that BellSouth should send the funds directly to him to put in the guardianship account. The complaint states that BellSouth had a duty to deliver into the proper hands any funds that it held for the guardianship, and that it negligently and in breach of its duty sent the guardianship funds to Felder. The complaint asserts that BellSouth was put on notice of the probate court's order and, therefore, F & D was entitled to judgment over against BellSouth for such sums as it is required to pay. On November 2, 2000, an order was filed in the probate court granting the successor guardian judgment against Felder and a judgment against F & D Bonding Company, plus interest.

BellSouth's answer to the third party complaint admits the allegation of the third party complaint that, because of Tatum's father death, certain monies became payable to Tatum from BellSouth. The answer denies that BellSouth was put on notice concerning the order's provision for joint control and denies that BellSouth had a duty to deliver the funds into the proper hands. If it had such a duty, BellSouth claims it fulfilled that duty by delivery of the funds to Felder, the guardian of the estate. The answer further admits that the funds were sent to Felder, and that they were never deposited into the guardianship funds, but denies that BellSouth negligently or in breach of contract sent the funds to Felder.

A nonjury trial was held February 27, 2001, and on March 14, 2001, the probate court entered an "Order Granting Fidelity and Deposit Company of Maryland Judgment Against BellSouth Telecommunications, Inc.," which provides:

> 1. That the father of Ashley J. Tatum, Ernest Tatum, Jr. (social security no. [Redacted] was an employee of BellSouth.
>
> 2. Because of the death of Ernest Tatum, Jr., on January 28, 1995, certain monies became payable to Ashley J. Tatum from BellSouth or its agents/affiliates.

---

[1] We note at this point that both parties cite in their briefs various exhibit numbers including an exhibit for this provision of the order. The exhibits were not filed as part of the record in this appeal, but where both parties concede the substance in the exhibit which is material to our decision, we will consider it a stipulation of fact.

3.  That Ashley J. Tatum is a minor.

4.  That on October 19, 1995, Rosalyn W. Felder ("Felder") was appointed by this Court as legal Guardian of the person and estate of Ashley J. Tatum.

5.  That pursuant to order of this Court dated October 19, 1995, bond was set at Two Hundred Ten Thousand Dollars ($210,000) and F&D became surety for Felder.

6.  That the order of this Court dated October 19, 1995, additionally provided that Guardianship funds were subject to joint control with attorney Philip J. Cooper.

7.  That by letter dated October 19, 1995, attorney Philip J. Cooper put BellSouth on notice that (i) a Guardianship had been established for Ashley J. Tatum and (ii) that in accordance with the joint control required by the Probate Court of Shelby County, Tennessee, funds held for Ashley J. Tatum should be sent to attorney Philip J. Cooper at 251 Adams Avenue, Memphis, Tennessee 38103. Philip Cooper enclosed with this letter the Order Appointing Rosalyn Felder Guardian and directing Attorney Philip Cooper to share joint control of Guardianship funds and the Certificate of Guardianship.

8.  That Attorney Philip Cooper testified that there were subsequent conversations between representatives of BellSouth and him during which Philip Cooper repeated his request to BellSouth to direct all funds payable to the Guardianship to him and that BellSouth indicated that it would not comply with the aforementioned Orders of this Court.

9.  That the testimony of Philip Cooper was credible and further that it was unrefuted by BellSouth, BellSouth choosing to have no one testify at trial on its behalf.

10.  That the Guardianship established for Ashley J. Tatum was the entity to receive the monies owed by BellSouth, and BellSouth was obligated to deliver into the proper hands any funds it held for said Guardianship.

11.  That BellSouth sent guardianship funds in the form of a check made payable to "Ashley J. Tatum, Rosalyn W. Felder Guardian of" in the amount of $18,622.38 to Felder instead of Cooper, which funds were never deposited into the Guardianship account.

12. That this payment by BellSouth was in breach of its obligations to the minor beneficiary, Ashley J. Tatum, whose interests were being protected by the Guardianship.

13. That as a result of this breach, on April 6, 2000, an Order was entered by this Court against F & D requiring F & D to pay the Guardianship the unaccounted for funds, including the funds sent directly to Felder by BellSouth.

14. That F & D tendered payment of the judgment plus ten percent (10%) prejudgment simple interest to the Guardianship.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1. That F & D is granted a judgment against BellSouth on its Third Party Complaint in the amount of $18,622.38 plus ten percent 10%) pre-judgment simple interest of $6,517.83 for a total judgment of $25,140.21;

2. That BellSouth pay Court costs in this matter.

BellSouth has appealed and presents the sole issue for review as:

Whether the Probate Court erred in finding that BellSouth had failed to pay the money it owed to the ward on account of her father's death when the undisputed facts demonstrated that BellSouth mailed a check in the appropriate amount to the court-appointed guardian and the guardian received the check?

We have rephrased this issue to:

Whether the probate court erred in finding that the payment by BellSouth was in breach of its obligation to the minor beneficiary whose interests were being protected by the guardianship.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

BellSouth states in its brief that it "has been unable to find any cases that address the narrow issue presented in this appeal," but that "the most closely analogous Tennessee case of which BellSouth is aware is *Atkins v. Security Conn. Life Ins. Co.*, No. 02A01-9710-CV-00257, 1998 WL 900057 (Tenn. Ct. App. 1998). BellSouth summarizes *Atkins* in its brief as follows:

In that case, an insurance company paid death benefits based upon information submitted in a proper claim form that appeared to have been signed by the Plaintiff. As it turned out, Plaintiff, who was the actual beneficiary, was incarcerated at the time the claim was submitted and the insurance company paid the claim. Plaintiff's signature on the claim form had been forged. After discovering by accident that he was the designated beneficiary on his father's life insurance policy, Plaintiff filed suit against the insurer seeking to recover the death benefits that the insurer had previously paid to the fraudulent beneficiary.

On a motion for summary judgment, the trial court denied recovery and the Court of Appeals affirmed. This court held that the insurance company had satisfied its contractual obligations by paying in response to a claim form that appeared on its face to be proper.

Although *Atkins* may have some similar features to the case at bar, there are some significant facts in *Atkins* that distinguish it from the case at bar. In *Atkins*, the record revealed that the claim forms submitted were in order, and the insurance company asserted that there was nothing in the claim documents to indicate to the company that the documents were forged or otherwise improper. Plaintiff, Atkins, presented no evidence of anything in the documents that might have put the insurance company on notice of an irregularity. The *Atkins* court, affirming the judgment for the insurance company, relied upon the principle adopted in other jurisdictions that "an insurer is discharged from all subsequent liability when it makes good faith payments to a purported beneficiary without notice of any competing claims." *Id.* at 86; (citing *Crosby v. Crosby*, 986 F.2d 79, 83 (4th Cir. 1993) and other cases).

The difference between *Atkins* and the case at bar is easily seen. In the case at bar, it is undisputed that the order of the probate court required joint control, and the evidence does not preponderate against the trial court's finding that BellSouth was duly notified of the provision and rejected the request of the ward's attorney that the funds be sent to him for deposit in the guardianship estate. BellSouth's action resulted in a loss to the ward's estate, and BellSouth makes no issue that upon reimbursement of the estate by the surety, the surety stands in the shoes of the ward.

BellSouth was fully informed that joint control was provided for by the court, and if BellSouth had complied with the attorney's request, the funds would not have been misappropriated by the guardian. If there had been some confusion on the part of BellSouth, further inquiry would have resolved this confusion and thus again prevent a loss from occurring. "Where one of two persons must suffer loss by the acts or fraud of a third party, he who enables that third party to occasion the loss or to permit the fraud ought to be the sufferer." William H. Inman, *Gibson's Suits in Chancery* § 2 (7th ed. 1988). *See also Commercial Bank and Trust Co. v. Southern Indus. Banking Corp.*, 66 S.W.2d 209 (Tenn. Ct. App. 1932).

In the case before us, BellSouth's deliberate choice to ignore the court order and the attorney's request allowed the guardian to misappropriate the funds.

Accordingly, the order of the probate court is affirmed. The case is remanded to the probate court for such further proceedings as may be necessary. Costs of the appeal are assessed against appellant, BellSouth Telecommunications, Inc., and its surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.