LARRY R. DEMERATH, APPELLANT, V. KNIGHTS OF COLUMBUS, A FOREIGN INSURANCE COMPANY, APPELLEE.

680 N.W.2d 200

Filed June 4, 2004.   No. S-03-377.

Larry R. Demerath, of Demerath Law Offices, pro se.

Andrew M. Loudon, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This is an appeal from a declaratory judgment action in which Larry R. Demerath claimed that the Knights of Columbus (the Knights) had a duty to investigate a change of beneficiary form that was executed by his father's appointed attorney in fact. The district court for Douglas County, Nebraska, granted summary judgment in favor of the Knights, and Demerath appeals.

## BACKGROUND

The facts relevant to this appeal are not in dispute. Demerath's parents, Raymond J. Demerath (Raymond) and Ruby A. Demerath (Ruby), had five children: Judith Rech, Demerath, Patricia Cerney, Phyllis Weber, and Lois Tiemann. Raymond purchased two insurance policies from the Knights, in 1941 and again in 1990. The 1941 policy designated Ruby as primary beneficiary and the couple's then living five children as secondary beneficiaries. The 1990 policy named only Ruby as beneficiary with no named contingent beneficiaries.

In 1993, Raymond executed a durable power of attorney, naming one of his daughters, Weber, as his attorney in fact. On August 24, 1999, acting in her capacity as Raymond's attorney in fact, Weber executed a change of beneficiary form provided by the Knights for both the 1941 and 1990 policies. The beneficiary designation forms purported to designate the Raymond J. Demerath Revocable Trust (Trust) as sole beneficiary under both policies. On that same day, a copy of Raymond's executed durable power of attorney was provided to the Knights' agent, Jeff Beller. Beller provided a copy of the durable power of attorney to the certificate service department of the Knights on September 1. On September 2, the Knights accepted and recorded the change of beneficiary for both policies. A copy of the Trust was not submitted to the Knights.

Raymond died in July 2000. Upon Raymond's death, the Trust was to be used for the health, maintenance, and support of Ruby during her lifetime and, upon her death, for the benefit of his four daughters. Demerath was not a named beneficiary under the Trust. The Knights paid the proceeds of the 1990 policy, in the amount of $26,798.57, and the 1941 policy, in the amount of

$1,171.44, to the Trust pursuant to the beneficiary designation. Ruby died in February 2001. Ruby's will was admitted to probate and named all five children, including Demerath, as beneficiaries.

Demerath subsequently filed a declaratory judgment action. The trial court, in its order granting the Knights' motion for summary judgment, described the issue, quoting the petition, as stating that the Knights " 'in some way neglected its obligations to Raymond . . . in allowing a third party to change beneficiaries on two life insurance policies, with only a Power of Attorney — and no direct actual authority from [Raymond] himself.' "

The parties filed cross-motions for summary judgment. The trial court denied Demerath's motion and granted the Knights' motion, dismissing the petition. The trial court found that the Knights "had no separate duty to investigate the change of beneficiary that lead [sic] to the payment at issue in this case. The Knights . . . have, beyond factual dispute, acted in compliance with their contractual undertaking to Raymond . . . ."

Demerath filed a motion for new trial and for rehearing, which the trial court overruled. The court found that Demerath failed to cite any authority for the proposition that an insurer has some duty beyond its own contract with an insured to investigate into the insured's relationships and to determine that a distribution under the policy would be in all respects appropriate. Demerath timely filed this appeal, and we moved the case to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR
Demerath assigns that the trial court erred in (1) holding that use of a power of attorney to benefit oneself under a life insurance beneficiary is proper, (2) holding that an insurance company has no duty to pay death benefits to the insured's legal appointed beneficiaries, and (3) holding that an insurance company has no duty to determine proper beneficiaries.

## STANDARD OF REVIEW
■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine

issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Keys v. Guthmann,* 267 Neb. 649, 676 N.W.2d 354 (2004); *First Colony Life Ins. Co. v. Gerdes,* 267 Neb. 632, 676 N.W.2d 58 (2004).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *First Colony Life Ins. Co. v. Gerdes, supra; Misle v. HJA, Inc.,* 267 Neb. 375, 674 N.W.2d 257 (2004).

■ When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Quality Pork Internat. v. Rupari Food Servs.,* 267 Neb. 474, 675 N.W.2d 642 (2004).

## ANALYSIS

This case presents the following single issue for our determination: Whether the Knights had a contractual or fiduciary duty to investigate whether the change of beneficiary form presented by the attorney in fact under a general power of attorney was the actual intention of the insured, Raymond.

Demerath's first assignment of error mischaracterizes the trial court's holding in that the trial court did not hold that use of a power of attorney to benefit oneself under a life insurance beneficiary is proper. We agree with the trial court, as set forth in its order overruling Demerath's motion for new trial, that such an argument is more properly directed in a suit against the attorney in fact and has no direct relevance in a suit against the insurance company. See *Mischke v. Mischke,* 247 Neb. 752, 530 N.W.2d 235 (1995) (holding, in action by personal representative of decedent's estate against decedent's brothers, brother exceeded authority under durable power of attorney by transferring assets to himself and two other brothers without consideration while decedent was in coma). Accordingly, we will not separately address this assignment of error.

Demerath does not dispute that Raymond had the right to change the beneficiary under either policy. The executed beneficiary designation forms in the record reflect that Raymond did

indeed have authority under both policies to change the beneficiary designation. We conclude that Raymond reserved the right under both policies to change beneficiaries.

We must next determine whether the Knights had a duty to investigate the propriety of that change in beneficiary.

> Where an insurer, acting in good faith without any actual knowledge of the insured's mental incompetency, has recognized an apparently duly executed change of beneficiary and has paid the proceeds of the insurance to the substituted beneficiary, it is not liable to the original beneficiary when sued by him or her even though it is established that the insured was, in fact, incompetent and lacked the capacity to make the change of beneficiary. That is, the insurer is not under any duty to investigate the mental competency of the insured to change the beneficiary unless it knows of circumstances reasonably suggesting the probability of his or her mental incompetency.
>
> Similarly, an insurer is not required to investigate to determine whether a change of beneficiary had been procured by undue influence in the absence of knowledge of facts which would indicate that the change might have been so procured.

4 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 60:77 at 60-141 to 60-142 (1997).

In *McNabb v. Kentucky Central Life Ins. Co.*, 631 S.W.2d 253 (Tex. App. 1982), the mother of a deceased insured brought an action for damages against the insurance company. She alleged that the proceeds of several life insurance policies insuring her daughter's life were wrongfully paid to a third party as the result of a forged change of beneficiary form signed by the insured's father. The policies originally named the mother and the insured's estate as beneficiary. The change of beneficiary forms were dated 6 days before an automobile accident resulting in the insured's death and were received by the insurance company 2 days after the accident. The mother contended that the change of beneficiary was not valid because the forms were acted upon after the insured's death. The court concluded that the insurance company had no knowledge of any irregularity in the change of beneficiary forms and had no proof that the forms were signed after the

insured's death. Thus, the court concluded, the insurance company was under no duty to determine whether the change of beneficiary was procured or induced by improper means where it had no reason to believe or know that such was the case.

In *Bosworth v. Wolfe*, 146 Wash. 615, 264 P. 413 (1928), the Washington Supreme Court upheld the trial court's finding that a change of beneficiary form had been fraudulently executed. In so holding, the court held that the insurance company did not have a duty to inquire into the mental incompetency of the insured or to investigate whether undue influence had been exerted upon him to procure the order to change the beneficiary.

Thus, whether an insurance company has a duty to investigate the propriety of an attorney in fact's change in beneficiary designation under an insurance policy depends on whether the insurance company had knowledge of facts reasonably suggesting the change was improper. The record discloses no such knowledge.

We conclude that the Knights did not, in this case, have any contractual or fiduciary duty to make inquiry as to the propriety of the change in beneficiary forms submitted to it and signed and executed by the attorney in fact.

Demerath also contends in his brief that certain portions of deposition testimony given by the attorney in fact relating to conversations she had had with Raymond constitute inadmissible hearsay. Demerath fails, however, to assign this argument as error, and therefore, we do not address it. See *State ex rel. City of Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003) (errors argued but not assigned will not be considered on appeal).

## CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

AFFIRMED.