ELEANOR M. EDLUND, APPELLANT, V. 4-S, LLC,
A NEBRASKA LIMITED LIABILITY COMPANY, APPELLEE.
702 N.W.2d 812

Filed August 23, 2005.    No. A-03-1425.

Patrick J. Nelson, of Jacobsen, Orr, Nelson, Wright & Lindstrom, P.C., for appellant.

Larry R. Baumann, of Kelley, Scritsmier & Byrne, P.C., for appellee.

INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Eleanor M. Edlund brought this action pursuant to Neb. Rev. Stat. § 34-301 (Reissue 2004) to ascertain and establish the corners and boundaries between her land and the land of 4-S, LLC. The parties agree that the controlling boundary is the thread of

the stream of the Platte River, main channel, but disagree on the location of such thread. Both parties claim land by accretion—Edlund from the south bank and 4-S from the north bank. Following a bench trial, the court rejected 4-S' defense asserting adverse possession and determined that the boundary was a line delineated by points equidistant from the thread of the "middle channel" and the thread of "channel 3." Edlund appeals, and 4-S attempts to cross-appeal. Because the conclusive effect of 4-S' answers to requests for admission raises a compelling inference that the thread is located in the middle channel and because 4-S, in its brief, sets forth no assignment of error in its purported cross-appeal, we affirm in part, and in part reverse and remand with directions.

## BACKGROUND

Two main channels of the Platte River are at issue, and they have been referenced in a number of different ways in the proceedings discussed below. For the sake of uniformity and clarity, throughout this opinion, we shall use the trial court's designations of "middle channel" to refer to the northern channel at issue and "channel 3" to refer to the southern channel at issue. Edlund brought an action against 4-S seeking to ascertain and establish corners and boundaries of her land. In its answer, 4-S alleged that it and its predecessors had adversely possessed the land south of its property to channel 3 of the Platte River for longer than the requisite time period. Neither party pled mutual recognition and acquiescence. Because adverse possession is not an issue on appeal, we shall omit discussion of the stipulation and evidence pertinent to that issue.

The court held a bench trial on July 29 and 30, 2003. The parties stipulated to, and the court accepted, the legal descriptions of lands owned by Edlund and by 4-S. The Edlund land is composed of certain government lots located in Dawson and Phelps Counties and all Platte River accretion lands deriving from and adjacent to such government lots. The 4-S land is north of the Edlund land and is composed of certain government lots located in Dawson and Buffalo Counties and all Platte River accretion lands deriving from and adjacent to such government lots. The parties further stipulated that (1) the south boundary line of the

Edlund land is not in dispute, (2) the southwest corner of the Edlund land is the west terminus of the south boundary of the Edlund land, (3) the southeast corner of the Edlund land is the east terminus of the south boundary of the Edlund land, (4) the east and west boundary lines of the Edlund land are not in dispute (except as to real estate which 4-S claimed to own as a result of adverse possession), and (5) the boundary line between the Edlund land and the 4-S land is the thread of the stream of the Platte River, main channel. The parties expressly stated that they did not stipulate to the present exact location of such thread of the stream. In dispute is the northern border of the Edlund land.

Of particular significance are four surveys: the original Dawson and Phelps Counties government survey, the original Buffalo County government survey, the Nebraska Public Power District (NPPD) survey, and the Buffalo Surveying Corporation (BSC) survey. The court received each survey into evidence without objection. The original government surveys were filed with the Surveyor General's office in January 1868, and each depict thereon the Platte River, main channel. The Buffalo County survey also shows a "South Channel" of the Platte River to the south of the Platte River, main channel.

The NPPD survey depicts land in Phelps and Dawson Counties which is located immediately to the west of the lands belonging to Edlund and to 4-S and shows the west boundary of the Edlund land. The surveyor's certificate shows that a registered land surveyor performed the survey, that the plat was completed June 19, 1992, and that the plat was revised that same year on July 23, July 29, and August 14. On the right side of the survey under a heading of "Lines of Title," three different lines are set forth to represent "line of title," "accretion," and "thread of stream." Just below that is a "Legend." The legend contains a marking for, among other things, the "thread of main channel river - June 19, 1992," and the "thread of north channel river - June 19, 1992." The line on the survey corresponding to that in the legend for the "thread of main channel river - June 19, 1992," has the label "Main Channel Platte River" below it, and above the line is the label "Thread" with an arrow pointing to the line. North of the "Main Channel Platte River" is a line

labeled "Present North Channel," and to the south is a line labeled "Thread of South Channel 1992."

The BSC survey was performed at the request of Edlund's counsel by members of BSC, including Mitchell Humphrey, a licensed registered land surveyor and president of BSC. BSC surveyed the Edlund land from August 6 through December 11, 2002. The BSC survey also depicted the 4-S land, but the legal description on the survey contained only the Edlund land. The BSC survey depicted the "Centerline of Existing River Channel," which was north of the lot line of two of 4-S' government lots, largely north of a third lot line, and south of a fourth lot line. One of the "Surveyor's Notes" states: "No attempt was made to determine the thread of the stream of any channel of the Platte River for purposes of this survey. The centerline of the existing Platte River channel described herein was determined, as was the existing high bank of such Platte River channel described herein."

Humphrey testified that in preparing the BSC survey, his crew reestablished the points as they were established on the original government surveys. In connection with the pertinent surveying work, Humphrey was asked to assume (1) the accuracy of the NPPD survey, (2) that the west boundary line of the Edlund land was not in dispute, and (3) that the channel of the Platte River containing the thread of the stream of the Platte River, main channel, had not changed since the NPPD survey was conducted. Because Humphrey was asked to assume the accuracy of the NPPD survey, he did not determine the location of the thread of the stream of the Platte River, main channel, nor did he determine in which channel of the Platte River the thread of the stream was located. Humphrey testified that he was not asked to survey the thread of any channel of the Platte River but that he was asked to determine the centerline of the main channel of the Platte River, which task he accomplished by surveying the north and south bank lines and computing the centerline based upon such bank lines. Humphrey testified that the north boundary line of the Edlund land is the centerline of the existing river channel—depicted on the BSC survey as the middle channel—but not the thread of the stream of the channel. Humphrey testified, "I assumed that . . . the thread of the stream as depicted on [the NPPD] survey was the channel that we were going to match in

to. And, in fact, once we did that survey work[,] that did match. . . . As far as the center line of our channel is concerned."

When asked about the relationship between the thread of the stream of the Platte River, main channel, as depicted on the NPPD survey (which would be the middle channel) and the north boundary line of the Edlund land, Humphrey testified that the westerly point of the BSC survey matches the easterly point of the NPPD survey. In other words, the northwest corner of the Edlund land as reflected on the BSC survey is the same point as the thread of the stream of the Platte River, main channel, depicted on the NPPD survey. Humphrey testified that assuming the accuracy of the NPPD survey's depiction of the thread of the stream of the Platte River, main channel, the middle channel is a channel of the Platte River that contains the thread of the stream.

When asked if it were possible to find and plot a thread of the stream of the Platte River, Humphrey answered, "Probably not. . . . Because that line changes all the time. As the river flows." Humphrey testified that the bottom of the river's channels are constantly changing and that sometimes the bank lines change as well. Humphrey testified, "At any given moment you might be able to tell what the thread is. But practically speaking you couldn't tell which channel would go dry on a day to day basis. . . . Until they went dry." Humphrey testified that both the middle channel and channel 3 are well-defined channels. Humphrey testified that without making any assumptions as to prior surveys, he could make an educated guess as to the location of the thread of the stream by considering which channel carried the most water, which had the fastest flow of water, and which channel was the deepest. Based on Humphrey's visual observations, he opined that the middle channel was swifter, carried more water, and appeared to be deeper than channel 3. Humphrey also testified that the middle channel was the wider of the two channels.

Doug Stunkel, a member of 4-S along with his three sons, testified that he could cross the middle channel by walking. Stunkel testified that channel 3 and the middle channel were both about "[a] foot and a half" high on the Sunday before the trial. Stunkel testified that his understanding was that his property line was the geographic centerline of channel 3 or about 200 yards south of that channel. Stunkel testified that sometime after he purchased

the property, he spoke with one of Edlund's grandsons-in-law, who said that he thought the boundary was at the 214 marker of the NPPD survey, which marker is south of the line identified in the legend as "thread of main channel river - June 19, 1992."

Dave Moats testified that he had hunted in the area, that he had often canoed in both the middle channel and channel 3, and that he had waded across both channels on many occasions since the early 1970's. Based on those experiences, Moats believed that channel 3 was the main channel. He testified that channel 3 had always been referred to as the main channel by others. Gary Dyer testified that he is familiar with the land owned by 4-S and that he had hunted on Edlund's land with her permission. According to Dyer, Edlund told the "guys" that she did not like where they put a duckblind near channel 3 because she did not own that land. Another individual that hunted in the area testified that he considered channel 3 to be the main channel. Another grandson-in-law of Edlund testified that he has a duckblind near channel 3 and that although he had never seen that channel go completely dry, it had been close.

Prior to 1962 or 1963, Dawson County did not tax the Platte River accretion land. The Dawson County assessor testified that the county assessor's office assessed 281 acres—of which 258 acres was accretion—to 4-S for its four southernmost government lots. The Dawson County treasurer testified that 4-S paid the 2001 taxes on such land. The Dawson County surveyor testified that the cadastral maps utilized for taxation purposes are "rough approximation[s]" and are not intended to be used as surveys.

Without objection, the court received into evidence certain of Edlund's requests for admission and the responses of 4-S, including an admission that the NPPD survey is genuine and that it correctly and accurately depicts what it purports to depict. In its responses, 4-S admitted that the channel of the Platte River separating the Edlund land from the 4-S land is depicted on both the original Dawson and Phelps Counties government survey and the original Buffalo County government survey and that it "is labeled on each of such surveys as 'Platte River Main Channel.' " In addition, 4-S admitted that the location of the channel of the Platte River labeled "Channel B" on the copy of

the enlarged 1993 aerial photograph had not changed to a significant extent since June 20, 1993, and that likewise, the location of the channel of the Platte River labeled "Channel B" on the copy of the enlarged 1999 aerial photograph had not changed to a significant extent since April 6, 1999. It appears that the channel labeled "Channel B" in both photographs would be the middle channel.

The court entered its decree on October 31, 2003. Because the parties agreed on many corners, the only points that needed to be determined were the northwest and northeast corners of the property claimed by Edlund and the bearings and length of the boundary line between the north line of Edlund's property and the south line of 4-S' property. With regard to the claim of adverse possession, the court determined that 4-S did not sustain its burden to establish the concurrent existence of all the elements of adverse possession. The court found that 4-S admitted that the NPPD survey correctly and accurately " 'depicts what it purports to depict,' " but the court rejected Edlund's claim that 4-S had admitted either that the middle channel is the Platte River, main channel, or that the middle channel is the thread of the Platte River, stating:

> The court does not accept the reasoning that the depiction on [the NPPD survey] of [the] line labeled "thread of main channel river" is a factual determination rather than a label employed by the surveyor. Further, even if there was evidence to support a finding that the description "thread of main channel river" on [the NPPD survey] was the expression of an opinion by the surveyor as to the location of the "main channel" and the location of the "thread of main channel river", such opinions, without sufficient factual and scientific bases of support, cannot be accepted as the factual determination of which channel, if any, is the "main" channel or the "thread" of the stream.

The court found that the evidence was insufficient to conclude that any of the channels exhibited any other characteristics to establish any one of the channels as the main channel or the " 'thread of the stream.' " The court stated that "the greater weight of the evidence establishes that the Platte River is composed of at least three main threads at this location which, when

combined, support the determination that the Platte River is a 'braided' river." The court determined that " 'the thread of the channel where the waters flowed' " referred to the line on the land mass between the middle channel and channel 3, which line is delineated by the points equidistant from the thread of the middle channel and the thread of channel 3, and which line the court called the " 'division line.' " The court found that as to the land mass between the middle channel and channel 3, Edlund was entitled to ownership of the land extending from the thread of channel 3 to the division line, and that 4-S was entitled to the land extending from the thread of the middle channel to the division line. Edlund timely appealed.

## ASSIGNMENTS OF ERROR

Edlund alleges that the court erred (1) in finding that the NPPD survey did not correctly and accurately depict the location of the thread of the stream of the Platte River, main channel; (2) in finding that the NPPD surveyor's depiction of the thread of the Platte River, main channel, was not a factual determination by the surveyor; (3) in failing to find that the middle channel contained the thread of the stream of the Platte River, main channel; (4) in failing to find that the thread of the stream of the middle channel is the north boundary of the Edlund land; and (5) in finding that the geographical centerline between the thread of the middle channel and the thread of channel 3 is the boundary line between the Edlund land and the 4-S land.

■ It appears that 4-S intended to file a cross-appeal. Neb. Ct. R. of Prac. 9D(4) (rev. 2001) provides:

> Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

■ The brief of 4-S states on the cover only that it is the brief of appellee. The section entitled "Brief on Cross-Appeal" essentially states that 4-S wished to incorporate the brief of appellee by reference, and it fails to comply in most respects with the procedural rules for bringing a cross-appeal. Most significantly, the

brief on cross-appeal fails to assign any error. The rules regarding the manner of presenting a cross-appeal are the same as the rules applicable to an appellant's brief. *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001). Errors argued but not assigned will not be considered on appeal. *Demerath v. Knights of Columbus*, 268 Neb. 132, 680 N.W.2d 200 (2004). We therefore decline to address the merits of the purported cross-appeal.

## STANDARD OF REVIEW

■ An action to ascertain and permanently establish corners and boundaries of land under § 34-301 is an equity action. *Anderson v. Cumpston*, 258 Neb. 891, 606 N.W.2d 817 (2000). In an appeal from an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

*Depiction of Platte River, Main Channel, on NPPD Survey.*

Edlund argues that the trial court erred in finding that the NPPD survey did not correctly and accurately depict the location of the thread of the stream of the Platte River, main channel, and in finding that such depiction was not a factual determination by the surveyor.

In its responses to Edlund's requests for admissions, 4-S admitted (1) that the NPPD survey was genuine and that it correctly and accurately depicted what it purported to depict; (2) that the channel of the Platte River separating the Edlund land from the 4-S land is depicted on the original Dawson and Phelps Counties government survey and the original Buffalo County government survey, which channel "is labeled on each of such surveys as 'Platte River Main Channel' "; (3) that the location of the channel of the Platte River labeled "Channel B" (which appears to be the middle channel) on the copy of the enlarged 1993 aerial photograph had not changed to a significant extent since June 20, 1993; and (4) that the location of the channel of the Platte River labeled "Channel B" on the copy of the enlarged

1999 aerial photograph had not changed to a significant extent since April 6, 1999.

█ Neb. Ct. R. of Discovery 36(b) (rev. 2000) states in pertinent part that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Admissions that a party has not sought to withdraw or amend conclusively establish the matter admitted. *Omega Chemical Co. v. Rogers*, 246 Neb. 935, 524 N.W.2d 330 (1994). We find no request by 4-S or any action by the court permitting withdrawal or amendment of these admissions. Therefore, we must consider the matters admitted to be conclusively established, and thus, the NPPD survey correctly and accurately depicts the thread of the Platte River, main channel, for purposes of this litigation. We conclude that the trial court erred in rejecting the depiction of the thread of the main channel on the NPPD survey as a factual determination.

*Which Channel is Main Channel?*

█ The parties stipulated that the boundary line between the Edlund land and the 4-S land is the thread of the stream of the Platte River, main channel. A party who seeks to have title in real estate quieted in him or her on the ground that it is accretion to land to which he or she has title has the burden of proving the accretion by a preponderance of the evidence. *State v. Matzen*, 197 Neb. 592, 250 N.W.2d 232 (1977); *Madson v. TBT Ltd. Liability Co.*, 12 Neb. App. 773, 686 N.W.2d 85 (2004). Under Nebraska law, title to riparian lands runs to the thread of the contiguous stream. *Anderson v. Cumpston*, 258 Neb. 891, 606 N.W.2d 817 (2000). The thread, or center, of a channel is the line which would give the landowners on either side access to the water, whatever its stage might be and particularly at its lowest flow. *Id.* The thread of the stream is that portion of a waterway which would be the last to dry up. *Id.* Where the thread of a stream is the boundary between estates and that stream has two channels, the thread of the main channel is the boundary between the estates. *Monument Farms, Inc. v. Daggett*, 2 Neb. App. 988, 520 N.W.2d 556 (1994). Where the thread of the main channel of a river is the boundary line between two estates and it changes by the slow and natural processes of accretion and reliction, the

boundary follows the channel. *Id.* A braided river or stream does not have one deep thread, but covers a very large area and contains many channels which move around in its normal bed; such interoperative channels cross one another and are subject to rapid change. *Anderson v. Cumpston, supra.*

The obstacle in this case is determining which channel is the main channel. As discussed above, it is conclusively established that the NPPD survey correctly and accurately depicts the thread of the Platte River, main channel. The NPPD survey does not directly determine the location of the thread of the Platte River, main channel, forming the boundary between the Edlund land and the 4-S land, because that survey depicts the land and the river channels immediately to the west of the government lots and river channels at issue. But the conclusive determination that the thread exists in the middle channel at the western boundary of the land at issue raises a compelling inference that the thread continues in that channel as the stream crosses the boundary and continues between the lands belonging to Edlund and to 4-S.

Humphrey testified that the northwest corner of the Edlund land on the BSC survey is the same point as the thread of the stream of the Platte River, main channel, depicted on the NPPD survey. Indeed, we observe that the NPPD survey shows a set of coordinates—"S71°02'15"E" and "818.09'"—on the line designated the "thread of main channel river - June 19, 1992," and those same coordinates appear on the BSC survey along the line labeled "Centerline of Existing River Channel." The BSC survey was overlaid on an aerial photograph—received into evidence for illustrative purposes only—which shows the line labeled "Centerline of Existing River Channel" to be in the middle channel. Further, Humphrey testified that assuming the accuracy of the NPPD survey's depiction of the thread of the stream of the Platte River, main channel (which accuracy has been conclusively established), the middle channel contained the thread of the stream. Based on Humphrey's visual observations, he opined that the middle channel was swifter, carried more water, appeared to be deeper, and was wider than channel 3. In addition, the evidence provides no basis for determining that the thread—conclusively located in the middle channel at the point the stream enters between the Edlund land and the 4-S

land—somehow moves or changes its location to channel 3 or some other location.

As set forth above, Edlund had the burden of proving the accretion by a preponderance of the evidence. Upon our de novo review, we conclude that a preponderance of the evidence supports Edlund's position that the thread of the stream of the Platte River, main channel, is located in the middle channel. Having established that the middle channel carries the thread of the stream, it necessarily follows that the northern boundary of the Edlund land is established by the thread of the stream of the middle channel.

## CONCLUSION

For the foregoing reasons, we do not consider 4-S' purported cross-appeal, and we thus affirm that part of the trial court's decree which rejected 4-S' adverse possession defense. We also conclude that Edlund established by a preponderance of the evidence that the middle channel contains the thread of the stream of the Platte River, main channel. We therefore reverse that part of the decision of the trial court and remand the cause with directions to quiet title to the disputed property in Edlund, establishing the northern boundary line at the thread of the stream of the middle channel.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.