926 So.2d 981 (2005)
FORTIS BENEFITS INSURANCE COMPANY and Fortis Insurance Company
v.
Bertha Bernice PINKLEY, individually and as executrix for the estate of Jay Donald Pinkley, deceased.
1040125.
Supreme Court of Alabama.
July 29, 2005.
Rehearing Denied October 21, 2005.
*982 Russell Myles and Karen Tucker Luce of McDowell, Knight, Roedder & Sledge, L.L.C., Mobile, for appellants.
Banks C. Ladd, Mobile, for appellee.
WOODALL, Justice.
Fortis Benefits Insurance Company and Fortis Insurance Company (hereinafter collectively referred to as "Fortis") appeal by permission, pursuant to Rule 5, Ala. R.App. P., from the denial of their motion for a summary judgment in an action commenced by Bertha Bernice Pinkley, individually and as executrix of the estate of her deceased husband, Jay Donald Pinkley, to recover life-insurance benefits. We reverse and remand.
For the purpose of this appeal, we treat the following facts as undisputed. In 1991, Jay Pinkley purchased a $100,000 life-insurance policy, the obligations of which were subsequently assumed by Fortis. The policy application listed Bertha Pinkley as the primary beneficiary, and Paul Sanford, Bertha's son and Jay's stepson, as the contingent beneficiary. The policy provided, in pertinent part:
"CHANGE OF BENEFICIARY: The beneficiary designation contained in the application will remain in effect until changed. The Owner may change the beneficiary at any time during your lifetime. A satisfactory written notice must be filed at the Home Office. The change will take effect only upon being recorded by [Fortis]."
(Emphasis added.)
In January 2000, someone identifying himself as Jay D. Pinkley telephoned Fortis's office. During that telephone call, which Fortis recorded, the caller requested a change-of-beneficiary application form ("the request form"). The caller provided a Fortis representative with the policy number and Jay D. Pinkley's Social Security number. Fortis sent a request form to Pinkley's address as reflected in its records, and, in February 2000, received the completed request form designating Dianne Sanford, the wife of Paul Sanford, as the primary beneficiary. The request form designated "Bernice Pinkley" as the contingent beneficiary. The name "Jay D. Pinkley" was handwritten on the line immediately above the words "Policyowner's signature." The request form contained *983 the Social Security numbers of both Pinkleys and purported to be witnessed by Paul Sanford. The telephone number given on the request form matched the telephone number on Jay Pinkley's policy-application form. On February 28, 2000, Fortis stamped the request form with acknowledgment of receipt and agreement to the requested change. Fortis then mailed a copy of the stamped request form to Jay Pinkley's address of record. Fortis received no objection to the change from Jay Pinkley.
Jay Pinkley died on April 26, 2001. On or about May 15, 2001, Dianne Sanford filed a claim for the policy benefits. Fortis paid her the proceeds of the policy on May 22, 2001.
In March 2003, Bertha Pinkley, through her attorney, also filed a claim for the benefits of Jay Pinkley's life-insurance policy, alleging that Jay Pinkley's signature on the request form was forged.[1] Fortis denied Pinkley's claim, saying that it had discharged its contractual obligations by paying the policy benefits to Dianne Sanford in reliance on the request form.
On March 25, 2003, Pinkley sued Fortis, alleging various theories arising out of its refusal to pay her the proceeds of the policy on Jay Pinkley's life, including (1) negligence, (2) wantonness, (3) breach of contract, and (4) bad-faith failure to pay a claim. Fortis and Pinkley filed cross-motions for a summary judgment. In an order denying both motions, the trial judge certified a controlling question of law, thereby laying the predicate for a permissive appeal from an interlocutory order, pursuant to Rule 5. The order stated, in pertinent part:
"[T]he court finds and hereby CERTIFIES that this order involves a controlling question of law as to which there is substantial ground for difference of opinion, that an immediate appeal from this order would materially advance the ultimate termination of this litigation, and that an appeal would avoid protracted and expensive litigation.
"In this case, [Pinkley] has sued Fortis because she claims Fortis improperly paid the death benefits of her late husband's life insurance policy to [Pinkley's] daughter-in-law, who, according to Fortis' records, was the beneficiary of record at the time of the decedent's death. [Pinkley], however, claims that she was the proper beneficiary and that the change of beneficiary form that substituted her daughter-in-law as the beneficiary was forged. It is undisputed that the benefits were paid to the daughter-in-law without any notice of a competing claim by [Pinkley]. The controlling question of law presented in this matter is whether [Ala.Code 1975, § ] 27-14-24, bars [Pinkley's] claims. Section 27-14-24 provides ... as follows:
"`Whenever the proceeds of, or payments under, a life or disability insurance policy or annuity contract, heretofore or hereafter issued, become payable in accordance with the terms of such policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment thereof in accordance with the terms of the policy or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract, or by such assignment, as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor; and such payments shall fully discharge the insurer from all claims under the policy or contract, unless, before payment *984 is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such other person claims to be entitled to such payment or some interest in the policy or contract.'"
This Court granted Fortis's petition for permission to appeal to consider a question of first impression in Alabama: whether § 27-14-24 protects an insurer from double liability if in good faith it pays life-insurance benefits to an individual claiming the benefits on the basis of a forged change-of-beneficiary request form. Stated more narrowly, the question is whether a life insurer that receives a change-of-beneficiary request form, regular on its face and executed by a person purporting to be the owner of the policy, has a duty to investigate the authenticity of the signature before paying death benefits under the policy to the person designated on the form as the primary beneficiary. We answer that question in the negative.
"`It is the general rule that when the insurer makes payment of the proceeds of insurance to the person who by the policy is the proper recipient, such payment is a discharge of the liability of the insurer.'" Alfa Life Ins. Corp. v. Culverhouse, 729 So.2d 325, 327 (Ala.1999) (quoting Miller v. Paul Revere Life Ins. Co., 81 Wash.2d 302, 305, 501 P.2d 1063, 1065 (1972)) (emphasis added). In accord with this general rule, "the insurer is not under any duty to determine whether the change of beneficiary was procured or induced by improper means where it has no reason to believe or know that such was the case." 5 George J. Couch et al., Couch on Insurance § 28:97 (Rev.2d ed.1984). Similarly, it is also said:
"Where an insurer, acting in good faith without any actual knowledge of the insured's mental incompetency, has recognized an apparently duly executed change of beneficiary and has paid the proceeds of the insurance to the substituted beneficiary, it is not liable to the original beneficiary when sued by him or her even though it is established that the insured was in fact incompetent and lacked the capacity to make the change of beneficiary. That is, the insurer is not under any duty to investigate the mental competency of the insured to change the beneficiary unless it knows of circumstances reasonably suggesting the probability of his or her mental incompetency.
"Similarly, an insurer is not required to investigate to determine whether a change of beneficiary had been procured by undue influence in the absence of knowledge of facts which would indicate that the change might have been so procured."
4 Lee R. Russ and Thomas F. Segalla, Couch on Insurance 3d § 60:77 (1997) (emphasis added). See also Demerath v. Knights of Columbus, 268 Neb. 132, 137, 680 N.W.2d 200, 204 (2004) (insurer did not "have any contractual or fiduciary duty to make inquiry as to the propriety of the change in beneficiary forms submitted to it").
Section 27-14-24 is consistent with this general rule and is one of a number of "facility of payment" statutes in force in various states. See, e.g., Cal. Ins.Code, § 10172 (West 1993); Conn. Gen.Stat., § 38a-453(c)(2005); Fla. Stat. Ann., § 222.13 (West 1998); Michie's Ky.Rev. Stat. Ann., § 304.14-260 (Lexis Nexis 2001); La.Rev.Stat. Ann., § 22:643 (West 2004); Michie's Md.Code Ann., Ins. § 12-208 (Lexis Nexis 2003); Tex. Ins.Code Ann., § 1103.103 (Vernon 2004); Wash. Rev.Code Ann., § 48.18.370 (2004); Michie's W. Va.Code, § 33-6-22 (Lexis Nexis 2003).
*985 Such statutes are aptly described as "narrowly drawn" facility-of-payment clauses that frequently appeared in certain types of insurance contracts. 15 William S. McKenzie & H. Alston Johnson III, Louisiana Civil Law Treatise: Insurance Law & Practice § 256 (2d ed.1996). Facility-of-payment clauses typically appeared in "the so-called `industrial' life insurance" or "burial policy." Id. "It was generally held that the clause was for the protection of the insurer, affording it protection against later claims from others who might arguably have a superior right to the proceeds." Id. It was sometimes said that "payment of the policy proceeds to a person entitled thereunder absolutely discharg[ed] the insurer of all liability." 2A John Appleman & Jean Appleman, Insurance Law and Practice § 1163, at 306 (1966) (emphasis added). At other times, it was held that payments must be "made by the insurer in good faith to a person entitled to the benefits thereunder." Id. See Dorsey v. Metropolitan Life Ins. Co., 145 So. 304, 306 (La.App.1933) ("[I]t is a complete defense for the insurer to show that in good faith it has already made payment to some one who is included among those mentioned in the facility of payment clause."). Statutes such as § 27-14-24 "writ[e] into policies a form of facility of payment clause." McKenzie & Johnson, Louisiana Civil Law Treatise, supra, at § 256.
The good-faith element that characterizes the general rule and the typical facility-of-payment clause was written into § 27-14-24. That Code section expressly insulates the insurer from liability for a double payment "unless, before payment is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such other person claims to be entitled to such payment or some interest in the policy or contract." (Emphasis added.) Indeed, Pinkley concedes that the statute shields insurers from liability for double payment in a number of situations, including
"(1) claims that named beneficiaries are not eligible to receive benefits because of `Slayer's Statute' issues that arise after payment, (2) receipt of a change of beneficiary application after the benefits have been paid, (3) claims that the owner of the policy was unduly influenced or incompetent at the time he or she signed the beneficiary designation or change of beneficiary application that arise after payment of the benefits, (4) claims that the owner was contractually obligated to name someone else as the beneficiary that arise after payment, (5) claims that a creditor has a lien against the benefits that arise after payment, and (6) other claims that attempt to collaterally attack payment to the beneficiary named by the owner in the insurer's records after payment to the named beneficiary."
Pinkley's brief, at 37-38 (emphasis added).
Pinkley contends, however, that forgery presents a situation that differs fundamentally from these situations because, she argues, § 27-14-24 applies only to payments that are made "in accordance with the terms of the policy or contract." She contends that benefits paid in reliance on a forged change-of-beneficiary request form are not made "in accordance with the terms of the policy or contract." She points to the policy provision limiting the right to change the beneficiary to the policy owner, in this case Jay Pinkley, and insists that the change in beneficiary was made not by Pinkley, but by an imposter. Thus, she argues, Fortis's payment to Sanford fell outside the protection of the statute.
For this proposition, Pinkley cites Bigley v. Pacific Standard Life Insurance *986 Co., 229 Conn. 459, 642 A.2d 4 (1994). In that case, the Supreme Court of Connecticut, purporting to apply the "general rule," 229 Conn. at 463, 642 A.2d at 6, held that the good-faith payment of life-insurance benefits to a claimant who had forged the signature of the policy owner on a change-of-beneficiary request form did not discharge the insurer "from its contractual obligation to pay the [original beneficiary]." 229 Conn. at 464, 642 A.2d at 6-7. In so holding, the Court stated:
"Unless the insurer has reason to believe that the beneficiary named by the policyholder is not entitled to receive the policy proceeds, payment to the policyholder's designated beneficiary discharges the insurer from liability under the policy.
"Payment of the policy proceeds to a person fraudulently substituted as beneficiary, however, does not relieve the insurer of its contractual obligation to pay the beneficiary actually designated by the policyholder. Western & Southern Life Ins. Co. v. Whiston, 30 Ill. App.3d 844, 333 N.E.2d 72 (1975); Stavros v. Western & Southern Life Ins. Co., 486 S.W.2d 712 (Ky.App.1972); Union Labor Life Ins. Co. v. Parmely, 270 Md. 146, 311 A.2d 24 (1973); . . . cf. McNabb v. Kentucky Central Life Ins. Co., 631 S.W.2d 253 (Tex.App.1982)....
"This conclusion is consistent with the general rule that a change of beneficiary of an insurance policy can be effected only by following the procedure prescribed by the policy.... The life insurance policy ... sets forth only one method by which a change of beneficiary may be effected: `[T]he owner [of the policy] may change the Beneficiary ... by filing a satisfactory written request with us at our Executive office....' (Emphasis added.) Because [the forger], rather than the owner of the policy, signed the change of beneficiary form and submitted it to the defendant ..., the request did not comply with the terms of the contract and, therefore, did not effect a change of beneficiary."
229 Conn. at 463-64, 642 A.2d at 6-7 (footnote omitted).
We find Bigley unpersuasive. The four cases cited by that Court afford little support for its holding or its rationale. Two of the casesStavros v. Western & Southern Life Insurance Co., 486 S.W.2d 712 (Ky.App.1972), and Union Labor Life Insurance Co. v. Parmely, 270 Md. 146, 311 A.2d 24 (1973)did not involve a forgery. In Parmely, the insured, Clyde Parmely, entered into a ceremonial marriage with Dorothy Pearsall, while he was still legally married to Francina Parmely. 270 Md. at 147, 311 A.2d at 24-25. Pursuant to the policies at issue, "the eligible beneficiary was [the insured's] `widow,'" who was not designated by name. 270 Md. at 147, 311 A.2d at 25. Maryland's facility-of-payment statute provided, in pertinent part:
"`Whenever the proceeds of or payments under a life ... insurance policy... become payable in accordance with the terms of such policy ... and the insurer makes payment thereof in accordance with the terms of the policy ..., the person then designated in the policy... as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor, and such payments shall fully discharge the insurer from all claims under the policy ... unless, before payment is made, the insurer has received ... [notice]... that such other person claims to be entitled to such payment or some interest in the policy or contract.'"
270 Md. at 149-50, 311 A.2d at 26 (emphasis omitted; emphasis added).
After the insured's death, the insurer paid the benefits to Dorothy, who, it was *987 ultimately determined, "had not been validly married to [the insured]." 270 Md. at 150, 311 A.2d at 26. Consequently, the trial court entered a summary judgment in favor of Francina, the "widow," in her action against the insurer for the benefits. The Maryland Court of Appeals affirmed, stating:
"The statute is nothing more than an attempted codification of the rule applied in the cases cited earlier. As we have already intimated, had Dorothy been designated by name in the policies, [the insurer] would have been discharged upon making payment to her, unless it had received prior notice of Francina's claim. In other words, since Dorothy had not been validly married to Clyde, she was not his `widow' under the policies. Hence, payment to her did not discharge [the insurer] from its obligations. On the other hand, Francina, as the `widow,' is entitled to payment."
270 Md. at 150, 311 A.2d at 26 (emphasis added).
Stavros is similarly inapposite. There, the insurer paid benefits to the sister of an insured 11-year-old minor in reliance on a change-of-beneficiary request form that required the "Signature of Life Insured if 15 years or older, otherwise of Parent or Guardian." 486 S.W.2d at 713. Although the signatory was, in fact, the minor's legal guardian, she signed the form as his "sister," rather than as "parent or guardian." Id. The Court of Appeals of Kentucky held that the insurer's payment to the sister did not discharge its liability, reasoning that the "circumstances were enough to put the [insurer] on notice that [the sister's] attempted change of beneficiary was an unauthorized act, patently contrary to the [insurer's] requirements on its change of beneficiary form." 486 S.W.2d at 714 (emphasis added).
Although McNabb v. Kentucky Central Life Insurance Co., 631 S.W.2d 253 (Tex. Ct.App.1982), did involve a forgery, the scope of the insurer's duty to discover forgeries was not directly in issue in that case. The case was actually decided on other grounds. Moreover, to the extent that McNabb does speak to that issue, it actually supports Fortis, stating that "[t]he insurer is not under any duty to determine whether the change of beneficiary was procured or induced by improper means where it has no reason to believe or know that such was the case." 631 S.W.2d at 255 (affirming a summary judgment for the insurer).
The only other case cited in Bigley actually involving a forgery is Western & Southern Life Insurance Co. v. Whiston, 30 Ill.App.3d 844, 333 N.E.2d 72 (1975). In that case, the wife of Edward Whiston forged his name on "a request for ... payment of the cash surrender value" of her husband's life-insurance policy, and, consequently, received the cash surrender value of the policy. In a declaratory-judgment action to determine the insurer's liability, the Appellate Court of Illinois concluded that Edward Whiston was entitled to reinstatement of the policy. Its conclusion, however, was unsupported by citation to even a single authority, and its analysis and rationale consisted entirely of the following: "There is no question but that Edward Whiston was the sole person who could request the payment of the cash surrender value of his policy. Simply stated, the [insurer] negligently paid out the proceeds on a forged signature to the wrong party." Whiston, therefore, is not helpful.
In addition to citing only unpersuasive authority, Bigley does not attempt to explain why forgery is outside the general rule. Thus, neither Pinkley, nor any case she cites, explains why the insurer has a *988 duty to discover forgeries but not to discover other irregularities, such as undue influence. As we noted earlier in this opinion, Pinkley admits that an insurer has no duty to discover whether "the owner of the policy was unduly influenced or incompetent at the time he or she signed the beneficiary designation or change of beneficiary application." Pinkley's brief, at 37-38 (emphasis added). She attempts to distinguish between forgery and undue influence on the ground that "[a] forged instrument is void," Ex parte Floyd, 796 So.2d 303, 308 (Ala.2001), while an instrument "obtained by undue influence, is not wholly void, but only voidable." McCary v. Robinson, 272 Ala. 123, 127, 130 So.2d 25, 29 (1961). In our view, however, the distinction is more formal than substantive in this context.
Forgery is a species of fraud, Life Insurance Co. of Georgia v. Smith, 719 So.2d 797, 809 (Ala.1998), as is undue influence. Pruitt v. Pruitt, 343 So.2d 495 (Ala.1977); Dusenberry v. First Nat'l Bank of Birmingham, 271 Ala. 207, 122 So.2d 716 (1960). The essence of undue influence is that the will of the influencing party so overpowered the will of the other party that the other party's act essentially became the act of the influencing party. See Wyatt v. Riley, 292 Ala. 277, 280, 293 So.2d 288, 289 (1974). Legally, therefore, a change of beneficiary procured by undue influence islike a forgerynot the act of the policy owner.
This is especially so in the case of fraud in the factum, that is, where a signatory is "`deceived into signing the instruments in ignorance of their true character.'" Sheffield v. Andrews, 679 So.2d 1052, 1054 (Ala.1996) (quoting Cumberland Capital Corp. v. Robinette, 57 Ala. App. 697, 702, 331 So.2d 709, 713 (1976)) (emphasis added). It is well settled that "`[a] signature procured by [fraud in the factum] is considered forged under Alabama law.'" 679 So.2d at 1054 (quoting Robinette, 57 Ala.App. at 702, 331 So.2d at 713)(emphasis added). In the case of fraud in the factum, the signature isin fact genuine. Nevertheless, it is legally tantamount to a forgery and the instrument is therefore void. Thus the law recognizes no distinction that depends simply on whether it was the owner of the policy who actually "put pen to paper."
Clearly, § 27-14-24 makes no such distinction. It simply states that when "the insurer makes payment ... in accordance with the terms of the policy" to "the person then designated in the policy,... such payments shall fully discharge the insurer," absent written notice of competing claims. (Emphasis added.) The purpose of this statute is similar to the purpose of a facility-of-payment clause, namely, to protect an insurer that pays benefits to one "then designated" as the beneficiary against a subsequent claim by one actually possessing a superior right to the benefits. See Smooth v. Metropolitan Life Ins. Co., 157 So. 298, 299 (La.Ct.App. 1934). Logically, in many cases, it would be as difficult for the insurer to discover one type of fraud as the other.
In that connection, Pinkley contends that "Fortis could have easily detected the irregularity by reviewing the signature samples of Mr. Pinkley in its records." Pinkley's brief, at 32. We disagree. The forged signature is not markedly different from the samples of Pinkley's bona fide signature contained in the record.[2] To *989 charge the insurer with liability in the case of a forgery but not in the case of undue influence would place form over substance, and such an approach is not authorized by the statute.
The phrase "payment ... in accordance with the terms of the policy" refers primarily to the time the proceeds become payable. Specifically, it refers back to the first word of the statute, namely, "[w]henever," that is, "whenever," pursuant to the policy, "the proceeds of [the policy] . . . become payable." Thus, "whenever" an event triggers the insurer's duty to pay and payment is made to "the person" whose name appears on the face of the policy or any change to the policy in regular form as the proper beneficiary, payment has been made "in accordance with the terms of [the] policy."
Any other construction defeats the purpose of the statute. Thus, we agree with Fortis, which states: "[Section 27-14-24] presumes that benefits might be paid to someone with an inferior claim. Under [Pinkley's] construction of the statute, an insurer would already have a complete contractual defense to any claims by anyone other than the named beneficiary, and § 27-14-24 would be a statute without a purpose." Fortis's reply brief, at 14 (emphasis added).
Under the undisputed facts of this case, a Fortis representative spoke by telephone with an individual purporting to be Jay Pinkley. The caller supplied Fortis with Jay D. Pinkley's Social Security number and the policy number of Jay Pinkley's life-insurance policy. Fortis sent the request form to Jay Pinkley's address of record. In addition to the witnessed signature purporting to be that of the policy owner, the completed request form Fortis received contained Jay Pinkley's address and the telephone number that was listed on his policy application. The request form bearing Fortis's stamped acceptance was mailed to Jay Pinkley's address of record. Before it paid the proceeds, Fortis had received no notice, actual or otherwise, of a competing claim or interest in the policy. The statute requires no more of an insurer than Fortis did in this case.
In summary, we hold that § 27-14-24 does not cast upon the insurer a duty to investigate and discover whether a change of beneficiary has been procured by forgery, and that where an insurer in good faith pays life-insurance benefits in reliance on a forged change-of-beneficiary request form, which appears regular in all respects, the insurer is fully discharged "from all claims under the policy or contract." Under the undisputed facts of this case, Fortis was entitled to a summary judgment. Consequently, the order denying Fortis's motion is reversed, and the case is remanded for the entry of a summary judgment for Fortis.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
HARWOOD, J., concurs specially.
LYONS, J., dissents.
HARWOOD, Justice (concurring specially).
I concur. I write specially only to make one further point.
The case upon which Bertha Bernice Pinkley most heavily relies, Bigley v. Pacific Standard Life Insurance Co., 229 Conn. 459, 642 A.2d 4 (1994), considered and found unpersuasive by the main opinion, did not involve the interpretation and application of a "facility of payments" statute. Although the insurer in that case, Pacific Standard Life Insurance Company, *990 sought to invoke the protection of § 38a-453(c), Conn. Gen.Stat., providing "facility of payment" protection under certain circumstances, the Bigley Court concluded that the statute, by its very terms, was inapplicable to the situation before it. The Court pointed out that the statute provided, in relevant part:
"`[R]ights of creditors of insured against beneficiary. (a) The beneficiary of any life insurance policy, being a person other than the insured, whether named as beneficiary in the original policy or subsequently named as beneficiary in accordance with the terms of the policy, shall be entitled to the proceeds of the policy as against the representatives or creditors of the insured, unless the policy was procured or the designation of a beneficiary was made with intent, express or implied, to defraud creditors. . . .
"`(c) The company issuing the policy shall be discharged of all liability thereunder by payment of the proceeds in accordance with the terms of the policy, unless, before such payment, the company has received written notice, from a creditor, executor or administrator of the insured, that the policy was procured or premiums were paid thereon with intent to defraud creditors. That notice may be disregarded by the company unless proper legal proceedings to enforce the claim are begun within three months from the giving of the notice.'"
229 Conn. at 462 n. 5, 642 A.2d at 6 n. 5.
The Court pointed out that " § 38a-453(c) applies where the `policy was procured or the premiums were paid thereon with intent to defraud creditors' of the insured, circumstances not alleged in this case. Section 38a-453(c) is therefore inapposite." 229 Conn. at 464 n. 7, 642 A.2d at 7 n. 7.
LYONS, Justice (dissenting).
I must respectfully dissent.
The main opinion, relying upon § 27-14-24, Ala.Code 1975, holds that an insurer paying the proceeds of a life-insurance policy to a beneficiary whose right to those proceeds is derived from a forged change-of-beneficiary form is discharged from further liability under a life-insurance policy when it makes a payment to such a beneficiary in good faith and without notice. Whether it would be sound public policy for the legislature to protect an insurer under these circumstances is a question not before us. The only question before us is whether § 27-14-24, as written, affords an insurer such protection.
Section 27-14-24 provides as follows:
"Whenever the proceeds of, or payments under, a life or disability insurance policy or annuity contract, heretofore or hereafter issued, become payable in accordance with the terms of such policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment thereof in accordance with the terms of the policy or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract, or by such assignment, as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor; and such payments shall fully discharge the insurer from all claims under the policy or contract, unless, before payment is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such other person claims to be entitled to such payment or some interest in the policy or contract."
(Emphasis added.)
The terms of the policy here provide as follows:
"CHANGE OF BENEFICIARY: The beneficiary designation contained in *991 the application will remain in effect until changed. The Owner may change the beneficiary any time during your lifetime. A satisfactory written notice must be filed at the home office. The change would take effect only upon being recorded by [Fortis]."
(Emphasis added.) The policy therefore quite plainly provides that only the owner can change the beneficiary designation. For purposes of this appeal we have assumed that the ownerJay Pinkleynever changed the designation of the beneficiary and that the change-of-beneficiary form was a forgery.
The main opinion treats § 27-14-24 as sufficient to protect the insurer, notwithstanding that for purposes of this appeal we have assumed that the change-of-beneficiary form was completed in a manner inconsistent with the terms of the policy. The main opinion dismisses the phraseology in § 27-14-24 ("Whenever the proceeds of, or payments under, a life or disability insurance policy or annuity contract, heretofore or hereafter issued, become payable in accordance with the terms of such policy or contract . . . .") by concluding that "`whenever' an event triggers the insurer's duty to pay and payment is made to `the person' whose name appears on the face of the policy or any change to the policy in regular form as the proper beneficiary, payment has been made `in accordance with the terms of [the] policy.'" 926 So.2d at 989. I respectfully submit that such a construction of § 27-14-24 would be appropriate only in the event that section read as follows:
"Whenever the proceeds of, or payments under, a life or disability insurance policy or annuity contract, heretofore or hereafter issued, appear to have become payable in accordance with the terms of such policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment thereof in apparent accordance with the terms of the policy or contract or in apparent accordance with any written assignment thereof, the person then designated in the policy or contract, or by such assignment, as being apparently entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor; and such payments shall fully discharge the insurer from all claims under the policy or contract, unless, before payment is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such other person claims to be entitled to such payment or some interest in the policy or contract."
(Changed language emphasized.)
Section 27-14-24, as written, contemplates that under certain circumstances benefits might be paid to someone with a claim to those benefits inferior to the claim of another. The statute protects an insurer under certain circumstances when it makes such a payment without having received notice of a claim by a person other than the named beneficiary. As written, § 27-14-24 is broad enough to protect an insurer when it receives a change-of-beneficiary form executed by the insured, makes payment pursuant to the form, and it is later determined that the owner of the policy was incompetent at the time he or she executed the form. I consider that circumstance to be distinguishable from the one presented here. Although in such a scenario the owner of the policy was incompetent, the signature on the form is that of the owner, and it cannot be said that the change-of-beneficiary form was executed in a manner inconsistent with the literal terms of the policy because the owner's signature is all the terms of the policy required. Suppose the policy provided, "The Owner may change the beneficiary at any time during your lifetime so long as you are at that time mentally competent." *992 (Emphasis added.) Because § 27-14-24 requires that the payment must be "in accordance with the terms of [the] policy" I submit that an insurer making payment without verification of mental competency would not be entitled to protection.
Nevertheless, as written, § 27-14-24 is simply not broad enough to protect the insurer under the circumstances here presented, where noncompliance with the literal terms of the policy is undisputed and compliance with the terms, merely apparent to the insurer at the time of payment, was not real. I must therefore respectfully dissent.
NOTES
[1] For the purpose of this appeal, we assume that the signature was forged.
[2] Indeed, Pinkley concedes that it would be necessary to "analyz[e] the pressure points made by the pen within the signature" on the original of the request form "under a microscope in order to determine [conclusively] whether [it] was authentic." Pinkley's brief, at 50.