CONNER, J.
 

 Odette Schwartz appeals the denial of her motion for summary judgment and the granting of summary judgment in favor of The Guardian Life Insurance Company of America (“Guardian Life”). Odette raises five issues on appeal regarding the order granting Guardian Life’s motion for summary judgment. She contends the trial court erred by (1) granting summary judgment when the facts are in dispute, (2) determining she waived her claim to life insurance proceeds, (3) determining that she is estopped from asserting the insurance proceeds were paid to the wrong beneficiary, and (4) determining that section 627.423, Florida Statutes „ (2004), shielded Guardian Life from liability for paying the wrong beneficiary. Lastly, she contends section 627.423 is unconstitutional as applied in this case. We agree there are material facts in dispute which preclude the granting of summary judgment for either side. Thus, we affirm the denial of Odette’s motion for summary judgment, and we reverse the granting of Guardian Life’s motion for summary judgment.
 

 This appeal stems from competing claims between Odette and Odette’s former sister-in-law Susan Schwartz to the proceeds of a one million dollar life insurance policy issued by Guardian Life. The policy insured the life of Roy Schwartz, who was Odette’s former husband and Susan’s brother. At the time Guardian Life issued the policy, Odette was the sole owner and beneficiary of the policy. After Roy’s death, Guardian Life paid the policy proceeds in three equal shares. Susan and Odette’s and Roy’s two daughters, Babette and Arielle Schwartz, received equal shares. The shares were paid pursuant to a combined change-of-owner and change-of-beneficiary form (“notice-of-change form”) which Odette alleges was fraudulently procured by Roy and Susan. After Guardian Life paid the proceeds to Susan, Babette, and Arielle, Odette filed a written claim with Guardian Life, which Guardian Life denied.
 

 Guardian Life filed an amended complaint for interpleader and declaratory relief, naming Susan and Odette as defendants and asking the court to determine who was entitled to the life insurance proceeds.
 
 [1]
 
 Odette filed an amended counterclaim against Guardian Life for breach of contract, claiming Guardian Life failed to pay her the life insurance proceeds, requesting that Guardian Life pay her the amount it had paid to Susan, and acknowl
 
 *800
 
 edging she was waiving her right to the money it had paid to Babette and Arielle.
 

 In its answer to the counterclaim, Guardian Life denied that it breached the contract and alleged that Odette was not a designated beneficiary under the policy. Guardian Life asserted multiple affirmative defenses, including estoppel, waiver, and payment and discharge. The premise of these affirmative defenses was that Odette delayed making a claim for the proceeds, which led Guardian Life to rely on the notice-of-change form that designated Susan as the owner and Susan, Babette, and Arielle as the beneficiaries.
 

 Summary Judgment Proceedings
 

 Odette filed a motion for summary judgment with respect to her counterclaim and to Guardian Life’s claim for declaratory relief. The motion contained ninety paragraphs of facts that Guardian Life, in its subsequent motion for summary judgment, agreed to view as accurate for purposes of arguing for or against summary judgment. A summary of these agreed-to facts follows.
 

 Agreedr-To Facts
 

 Odette and Roy were married in 1982 and had two daughters, Babette and Ar-ielle, during their marriage. In 1985, Odette, with Roy’s consent, applied to Guardian Life for a life insurance policy on Roy’s life, which Guardian Life approved at a face value of one million dollars. Roy handled the parties’ business affairs, maintained their documents and records, and paid most of the bills, including the premiums on the life insurance policy. Roy filed for divorce in 1997, whereupon a contentious and protracted divorce proceeding ensued, ending in 1999. It was in 1998, while the divorce proceeding was pending, that the notice-of-change form was executed and delivered to Guardian Life.
 

 In 1998, Guardian Life received a telephone call from Roy requesting forms which would allow a change of owner and a change of beneficiary. Guardian Life conceded, for purposes of summary judgment, that at the time Roy requested the forms, Odette was the sole owner of the policy and the only one with authority to authorize a change with respect to ownership or beneficiary status. However, Guardian Life also had a business practice whereby it made the notice-of-change form available to its insureds, regardless of their status as owner, because Guardian Life trusts its insureds. Thus, Roy, as a non-owner insured, was eligible to request — but not to execute — a notice-of-change form. Guardian Life’s records reflect that it sent the notice-of-change form to Roy.
 

 The completed notice-of-change form contains a signature purporting to be Odette’s signature as former owner, which Odette contends is fraudulent. The form also contains Susan’s signature as proposed new owner, and the signature and notary stamp of Una B. Gursey, the wife of Roy’s former accountant. Una Gursey was deceased at the time suit was filed. The notary certificate has three problems: the notary certificate was incomplete; the notary commission had expired by two years according to the notary stamp on the document; and it is unclear whose signature Gursey was intending to notarize. Despite the problems, Guardian Life’s senior title examiner reviewed the notice-of-change form and deemed it satisfactory. Guardian Life changed its records by removing Odette as sole owner and sole beneficiary, replacing Susan as sole owner, and designating Susan, Babette, and Ar-ielle as beneficiaries. Guardian Life sent confirmation of the change to Roy but not to Odette.
 

 The policy at issue provides:
 

 Change of Owner or Beneficiary
 

 
 *801
 
 The owner may change the owner or beneficiary
 
 by written request satisfactory to Guardian ...
 

 (Emphasis added.)
 

 Guardian Life’s business practice when processing notice-of-change forms does not require utilization of a handwriting expert to authenticate signatures. It also does not require comparing the signature of the former owner on the notice-of-change form with any known signature of the former owner already on file with Guardian Life. Although the notice-of-change form contemplates on its face a notarization process applicable to signatures on the form, Guardian Life’s business practice does not require the signatures to be notarized. Whether the signatures are notarized and whether the notarization is irregular would not cause concern to Guardian Life. Guardian Life’s business practice also does not require Guardian Life to contact the former owner to determine whether the former owner’s signature is valid. Guardian Life does not have a time requirement for a beneficiary to make a claim under a policy. None of Guardian Life’s aforementioned business practices are memorialized in writing. Remarkably, there is no written policy regarding what Guardian Life employees should do to implement a change-of-ownership or a change-of-beneficiary.
 

 Odette was not aware of the request to change the ownership and beneficiary of the policy and never authorized anyone to remove her as sole owner or sole beneficiary. In October 2005, she first became aware of the notice-of-change form that Roy had executed — more than one year after Roy’s death and eleven months after Guardian Life had paid the policy proceeds to Susan, Babette, and Arielle. She became aware of the notice-of-change form when she filed a claim on the policy and Guardian Life supplied her with a copy of the notice-of-change form.
 

 Susan and Odette were never on good terms. Two days after Roy’s death in August 2004, Susan filed a claim with Guardian. After Roy’s death, Odette remembered that she was owner of a life insurance policy on Roy’s life (because she had originally applied for it and because it had been guaranteed to her during the final judgment of dissolution), but could not locate the policy or remember which company had issued the policy. At the time of Roy’s death, her immediate financial needs were being taken care of and she was partially bedridden, so she did not consider the matter of presenting a claim to be urgent.
 

 In November 2004, Arielle advised Odette that Susan had received money from “an insurance company” and that Susan had told Arielle that Arielle and Ba-bette would soon be receiving money of their own in connection with Roy’s life insurance. Upon hearing this information, Odette began to feel that she “might” somehow have been involuntarily disenfranchised of her beneficiary rights in the policy, which had been secured by the final judgment of dissolution, and she began to search again for the policy or any documentation identifying the issuer of the policy. Odette did not find the policy, but did find an invoice from Guardian Life.
 

 Upon finding the Guardian Life invoice, Odette contacted or met with three different attorneys, but she took no action because she was told that it would cost tens of thousands of dollars to pursue a claim. Also, after conferring with counsel, she was led to believe that if she interfered with the current state of affairs, the final distribution of insurance proceeds otherwise paid or payable to her children could be tied up in court proceedings and delayed for years so as to deprive not only
 
 *802
 
 Odette, but also her children, of the use or possession of any portion of such funds. Because Odette loved her children and they needed funds to live and attend college, Odette concluded that the law and the court system had failed her and that there was nothing she could do to undo Roy’s decision to change owner and beneficiaries of the policy.
 

 In September 2005, Odette decided to take legal action. Through counsel, she submitted a letter of inquiry to Guardian Life seeking an explanation as to why she had not been paid any money in connection with the policy and presenting a written claim for the proceeds. In response, Guardian Life advised that Odette’s rights as both beneficiary and owner of the policy had been extinguished in March 1998 pursuant to the notice-of-change form, a copy of which Guardian Life attached to its letter. Odette immediately denounced her purported signature on the notice-of-change form as a forgery and, in late October 2005, resubmitted a claim to Guardian Life for the proceeds of the policy. The second demand for payment by Odette prompted Guardian Life to file its complaint for interpleader and declaratory relief.
 

 Supplemental Facts Submitted by Guardian Life
 

 Guardian Life filed a memorandum of law opposing Odette’s motion for summary judgment, as well as its own motion for summary judgment with respect to the counterclaim. Guardian Life supplemented Odette’s list of undisputed facts with additional facts it contended were “undisputed.” A summary of the supplemental “undisputed” facts alleged by Guardian Life follows:
 

 In June 1989, at the request of Odette, Guardian Life’s address of record changed from the Schwartz’s home address to Roy’s business address, and the address of record remained as such until Roy’s death.
 

 Odette knew the policy proceeds had been paid out as early as November 2004.
 

 Odette made a conscious decision to let her daughters keep the money and even accompanied them to a financial advisor to develop a long-term investment plan.
 

 Babette and Arielle each gave their mother portions of the proceeds.
 

 Odette made a conscious decision to let Susan keep and dissipate her share of the proceeds.
 

 Odette filed an amended reply memorandum in support of her motion for summary judgment and amended memorandum in opposition to Guardian Life’s motion for summary judgment. In these filings, Odette expressed her disagreement with the supplemental “undisputed” facts alleged by Guardian Life and contended that many of them were facts presented in her motion but restated in a misleading light so as to unfairly characterize their content.
 

 After a hearing on the motions, the lower court denied Odette’s motion for summary judgment, granted Guardian Life’s motion for summary judgment, and entered a final judgment.
 

 Legal Analysis
 

 Appellate review of orders granting summary judgment is
 
 de novo. Saris v. State Farm Mut. Auto. Ins. Co.,
 
 49 So.3d 815, 817 (Fla. 4th DCA 2010);
 
 Fina v. Hennarichs,
 
 19 So.3d 1081, 1084 (Fla. 4th DCA 2009). Our supreme court has said:
 

 The law is well settled in Florida that a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against
 
 *803
 
 whom a summary judgment is sought. A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law.
 

 If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by [the jury].
 

 Moore v. Morris,
 
 475 So.2d 666, 668 (Fla.1985) (internal citations omitted).
 

 Odette argues on appeal that the lower court’s summary judgment in favor of Guardian Life relied on facts supplemental to those that the parties had stipulated and that “many of the purported supplemental ‘facts’ inclusive of those identified by the Court in paragraphs 6, 7, 10, 14, 15, 18, 20, 21, 22, 23, and 24 of the Order and Final Judgment appealed from were either unsupported by the record and/or presented in a misleading light so as to unfairly characterize their content.” We agree the trial court improperly relied upon some of the supplemental facts put forth by Guardian Life that the record shows were disputed, rather than “undisputed.”
 

 Odette argues that the facts alluded to in paragraphs 20 and 24 of the summary judgment are disputed. She contends the common thread of those paragraphs is that Odette was aware in November 2004 that Susan had claimed and received proceeds from the Guardian Life policy. The issue of Odette’s knowledge that the proceeds of the policy she took out on Roy’s life had been paid to Susan, Babette, and Arielle is central to the legal theories employed by the trial court to grant summary judgment in favor of Guardian Life. It is important to note that Guardian Life’s assertion that Odette knew that proceeds of the policy had been paid relies on inferences from other facts. Guardian Life argues that each of its supplemental facts is supported by the record and provides accompanying record citations to prove so. Even if Guardian Life’s citations demonstrate that each of its supplemental facts is supported by the record, such record support does not mean summary judgment is appropriate where the facts are in dispute. Odette repeatedly testified in depositions and provided record support that she did not know that the policy proceeds Susan and her daughters received were from the Guardian Life policy originally issued to her as the owner until she received the copy of the notice-of-change form from Guardian Life. She believed it was possible that Roy had purchased another policy after the divorce.
 

 Based on a review of Odette’s and Guardian Life’s competing record citations, the record provides support for Odette’s contention that the facts concerning her knowledge that the insurance proceeds had been paid are disputed. That disputed issue alone affects whether the affirmative defenses of waiver, estoppel, and payment and discharge apply. Thus, this case was not ripe for summary judgment for either side.
 

 Facility of Payment Statutory Defense
 

 The circuit court found that Guardian Life was entitled to summary judgment based on its affirmative defense of payment and discharge pursuant to section 627.423, Florida Statutes (2004), which provides:
 

 Whenever the proceeds of or payments under a life or health insurance policy or annuity contract become payable in accordance with the terms of such policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment thereof in accordance with the terms of the policy
 
 *804
 
 or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract or by such assignment as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor; and such payments shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that such other person claims to be entitled to such payment or some interest in the policy or contract.
 

 This statute was originally passed in 1959. Other states have adopted a similar statute, and the case law of several states refers to the statute as a “facility of payment statute.” There are no state court appellate decisions in Florida interpreting or applying the statute.
 

 Given the dearth of case law in Florida construing section 627.423, both Odette and Guardian Life relied in the trial court and in this court upon out-of-state cases for guidance as to the application of the statute to the facts of this case. Odette principally relied upon
 
 Stavros v. Western & Southern Life Insurance Co.,
 
 486 S.W.2d 712 (Ky.1972),
 
 Bigley v. Pacific Standard Life Insurance Company,
 
 229 Conn. 459, 642 A.2d 4 (1994), and the dissent in
 
 Fortis Benefits Insurance Company v. Pinkley,
 
 926 So.2d 981 (Ala.2005); Guardian Life principally relied upon the majority opinion in
 
 Fortis.
 
 Each of these cases dealt with a facility of payment statute.
 

 In her brief, Odette first argues that section 627.423 as an affirmative defense is not available because páyment was not made “in accordance with the terms of the policy.” She contends that the statute does not apply to situations in which a change of beneficiary is procured by a forgery. Her argument is that a change of beneficiary by forgery is not “in accordance with the policy,” thus, payment pursuant to such a fraudulent change of beneficiary is likewise not “in accordance with the policy,” and the statute offers no protection. For the reasons discussed below, we determine her argument on this point is not persuasive.
 

 Odette next argues that the defense of facility of payment should not be available to Guardian Life because the less-than-vigilant business practices of Guardian Life allowed a fraudulent situation to occur. For this argument, Odette relies on the legal principle espoused in
 
 Niccolls v. Jennings,
 
 92 So.2d 829 (Fla.1957), and
 
 Eulette v. Merrill, Lynch, Pierce, Fenner and Beane,
 
 101 So.2d 603 (Fla. 3d DCA 1958) that “where one of two innocent parties must suffer through the act of a third person, the loss should fall upon the one whose conduct created the circumstances which enabled the third party to perpetrate the wrong or cause of loss.”
 
 Niccolls,
 
 92 So.2d at 832-33 (citing
 
 Reasoner v. Fisikelli,
 
 114 Fla. 102, 153 So. 98 (1934)). Again, for the reasons discussed below, we determine her argument on this point is not persuasive.
 

 Odette supports her analysis of the inapplicability of section 627.423 using case law from other jurisdictions. She first relies on
 
 Stavros v. Western & Southern Life Insurance Co.,
 
 486 S.W.2d 712 (Ky.1972), where the crucial issue was whether an insurance company is absolved from liability for improper payment when it accepts a change-of-beneficiary from an individual not authorized to effect such a change. Kentucky’s facility of payment statute
 
 [2]
 
 is almost identical in language to Florida’s.
 
 *805
 
 However,
 
 Stavros
 
 is not persuasive for the situation presented by this case.
 

 In
 
 Stavros,
 
 the insurance policy required that a change of beneficiary could be accomplished only by the insured with the consent of the beneficiary. The policy was purchased by a father to insure the life of his minor son. The father, who was the original beneficiary under the policy, died before his son was an adult. Upon the father’s death, the insured’s adult sister became the insured’s guardian. A few weeks after the sister was appointed as guardian, she provided the insurance company with a death certificate for the father and a signed change of beneficiary form designating herself as the beneficiary of the policy. However, when she signed the change of beneficiary form, she signed designating herself as “sister,” and not as guardian, and she did not obtain the approval of the guardianship court to make the change of beneficiary. The insured was accidentally killed shortly after he became an adult, and the policy proceeds were paid to the sister. The insured’s estate then brought an action against the insurance company for improper payment of the proceeds. The insurance company defended, raising Kentucky’s facility of payment statute. The Kentucky Supreme Court ruled that facility of payment statute did not protect the insurance company because the sister signed the change of beneficiary form as “sister,” and not as guardian. Thus, the insurance company was put on notice, by the terms of the insurance policy, that the change of beneficiary was not proper and that payment was not in accordance with the terms of the policy.
 

 We do not find
 
 Stavros
 
 persuasive because, in that case, there was no assertion of fraud by the insured’s estate or any issue of forgery involved in the transaction. The sister made an innocent mistake in not signing the change of beneficiary form as guardian and in not obtaining approval of the guardianship court for the change of beneficiary. The Kentucky Supreme Court simply concluded the sister’s mistake should have put the insurance company on notice that it was not complying with its own insurance policy by changing the beneficiary.
 

 Odette next relies on
 
 Bigley v. Pacific Standard Life Insurance Co.,
 
 229 Conn. 459, 642 A.2d 4 (1994) to argue that we should rule section 627.423 does not provide a defense in this case. However, we determine
 
 Bigley
 
 presents no useful guidance to us. First, the statute addressed in
 
 Bigley,
 
 Connecticut General Statutes section 38a-453, is not at all comparable to section 627.423. Second, the Supreme Court of Connecticut noted in a footnote that section 38a-453 did not apply to the facts of the case.
 

 Lastly, Odette argues that in interpreting section 627.423, we should adopt the reasoning of the dissent in
 
 Fortis Benefits Insurance Co. v. Pinkley,
 
 926 So.2d 981 (Ala.2005). However, before addressing her argument, it is best to address the majority opinion in
 
 Fortis,
 
 which was relied upon by the trial court in granting summary judgment and by Guardian Life in the trial court proceedings and on appeal.
 

 We begin our discussion of
 
 Fortis
 
 with two observations: the case addresses the issue of a change of beneficiary obtained by forgery, and Alabama’s facility of payment statute is almost identical in language to section 627.423.
 
 [3]
 
 We note that
 
 *806
 

 Fortis
 
 analyzes
 
 Stavros
 
 and
 
 Bigley.
 
 We also note that
 
 Fortis
 
 contains a good, although brief, discussion of the historical background of facility of payment clauses in insurance contracts and the adoption of facility of payment statutes by several states. We further view
 
 Fortis
 
 to be helpful because the appeal was in the context of reviewing the denial of a motion for summary judgment.
 

 In
 
 Fortis,
 
 Jay Pinkley purchased a life insurance policy listing his wife, Bertha Pinkley, as the primary beneficiary, and Paul Sanford, Bertha’s son and Jay’s stepson, as the contingent beneficiary. Similar to the policy involved in this appeal, the policy in
 
 Fortis
 
 provided that only the owner of the policy may change the beneficiary. Nine years later, someone identifying himself as Jay Pinkley telephoned one of Fortis’s offices requesting a change of beneficiary form. The caller not only provided the policy number, but also Jay’s social security number. Fortis sent the change of beneficiary form to the address on file for the owner of the policy (Jay’s address). Shortly thereafter, Fortis received a complete change of beneficiary form changing the beneficiary to Dianne Sanford, the wife of Paul Sanford, as the primary beneficiary and designating “Bernice Pinkley”
 
 [4]
 
 as the contingent beneficiary. “Jay D. Pinkley” was handwritten directly above the line indicated for “Policyowner’s signature.” The form also contained the social security numbers for both Pinkleys and a telephone number which matched the number for Jay Pinkley on the policy application. The form was witnessed by Paul Sanford. Fortis made the change as requested and sent a copy of the request form stamped “received” to Jay Pinkley at the address on record for him. No objection to the change was received from Jay Pinkley.
 

 Shortly after Jay’s death, Dianne Sanford filed a claim for the policy benefits, which were paid to her the same month. Almost two years later, Bertha Pinkley made a claim for the benefits, contending the signature of Jay Pinkley on the change form was a forgery. Fortis denied Bertha’s claim, so Bertha sued Fortis, raising various claims. Similar to this case, Fortis and Bertha filed cross-motions for summary judgment. The trial court denied both motions for summary judgment but certified a controlling question of law to be addressed by the Alabama Supreme Court. The question of law was whether Alabama Code section 27-14-24 (1975) barred Bertha’s claims regarding improper payment of insurance proceeds. The issue presented a matter of first impression for the Alabama Supreme Court. The supreme court framed and answered the question as follows:
 

 [Wjhether § 27-14-24 protects an insurer from double liability if in good faith it pays life-insurance benefits to an individual claiming the benefits on the basis of a forged change-of-beneficiary request form. Stated more narrowly, the question is whether a life insurer
 
 *807
 
 that receives a change-of-beneficiary request form, regular on its face and executed by a person purporting to be the owner of the policy, has a duty to investigate the authenticity of the signature before paying death benefits under the policy to the person designated on the form as the primary beneficiary. We answer that question in the negative.
 

 Fortis,
 
 926 So.2d at 984.
 

 The Alabama Supreme Court began its analysis with the general rule that when an insurer pays the policy proceeds to the person who
 
 by the policy
 
 is the proper recipient, such payment is a discharge of the liability of the insurer. The supreme court then observed “the insurer is not under any duty to determine whether the change of beneficiary was procured or induced by improper means where it has no reason to believe or know that such was the case.”
 
 Id.
 
 at 984 (citing 5 George J. Couch, et al.,
 
 Couch on Insurance
 
 § 28:97 (Rev. 2d ed. 1984)). The court then noted that section 27-14-24 is consistent with a number of facility of payment statutes in various states (including Florida) and such statutes mirror facility of payment clauses frequently found in certain types of insurance contracts. Next, the court noted that such insurance clauses were for the protection of the insurer against later claims from others who might arguably have a superior claim to the proceeds. However, the case law developed around such clauses requires insurance companies to act in good faith. The Alabama Supreme Court concluded that Alabama’s facility of payment statute likewise required insurers to act in good faith when paying policy proceeds.
 

 Bertha argued on appeal that Alabama’s facility of payment statute does not afford protection to the insurer in situations where payment is obtained by forgery because in such situations, payment cannot be considered as being “in accordance with the policy” as required by the statute. She further argued that the policy provisions limiting the right to change the beneficiary to the policy owner do not allow the insurer to rely on the representations of an imposter. In support of her argument, Bertha cited and relied upon
 
 Bigley.
 
 The Alabama Supreme Court found
 
 Bigley
 
 to be unpersuasive (for reasons we similarly find
 
 Bigley
 
 to be unpersuasive).
 

 The Alabama Supreme Court then analyzed whether forgery presents a different situation than facility of payment protection given to insurers in situations in which a change of beneficiary designation was obtained by undue influence or from a policy owner who is incompetent. The court noted those situations are a species of fraud, just like forgery. A signature obtained by undue influence or when the policy owner is incompetent is no more the act of the policyholder than when a signature is forged. The court also noted that
 
 Bigley
 
 fails to explain why forgery should be treated any differently from those situations. Historically, facility of payment statutes have been interpreted to apply to signatures obtained by undue influence or from an incompetent person.
 
 [5]
 

 The majority in
 
 Fortis
 
 concluded that the Alabama facility of payment statute made no distinction in affording protection to situations involving forgery as compared to situations involving undue influence or incompetence. The majority focused on the language of the statute, which provides that payment “to the person
 
 then designated
 
 in the policy” fully discharges the insurer absent written notice of competing
 
 *808
 
 claims.
 
 Fortis,
 
 926 So.2d at 988 (emphasis in original). The court reinforced this interpretation of the statute with the following analysis:
 

 The phrase “payment ... in accordance with the terms of the policy” refers primarily to the
 
 time
 
 the proceeds become payable. Specifically, it refers back to the
 
 first word
 
 of the statute, namely, “whenever,” that is, “whenever,” pursuant to the policy, “the proceeds of [the policy] ... become payable.” Thus, “whenever” an event triggers the insurer’s duty to pay and payment is made to “the person” whose name
 
 appears on the face of the policy or any change to the policy in regular form
 
 as the proper beneficiary, payment
 
 has been made
 
 “in accordance with the terms of [the] policy.”
 

 Id.
 
 at 989 (emphasis in original). The majority agreed with Fortis that Alabama’s facility of payment statute
 
 presumes
 
 that benefits might be paid to someone with an inferior claim. The majority rejected the interpretation sought by Bertha (the statute did not apply to forgeries) because Bertha’s construction negates the presumption that benefits might be paid to someone with an inferior claim.
 

 We agree with the logic and the analysis of the Alabama Supreme Court in
 
 Fortis.
 
 The operation of the Florida facility of payment statute
 
 presumes
 
 that benefits might have been paid to someone with an inferior claim. We see no logical reason to treat situations in which a change of beneficiary, or change in the owner of the policy, is obtained by a forgery differently from situations where the change occurs as a result of undue influence or incompetency.
 

 Odette argues that we are compelled to follow
 
 Stavros
 
 and
 
 Bigley
 
 rather than
 
 Fortis
 
 because Florida requires that policy owners
 
 strictly comply
 
 with the procedures for effectuating a change-of-owner or change-of-beneficiary, whereas Alabama requires that policy owners
 
 substantially comply
 
 with the procedures for effectuating such a change. She argues that difference means we should agree with the dissent in Fortis.
 
 [6]
 
 We do not find her argument persuasive because the policy does not outline the procedure to be followed in implementing a change of owner or beneficiary in any detail.
 

 The majority in
 
 Fortis
 
 held:
 

 In summary, we hold that § 27-14-24 does not cast upon the insurer a duty to investigate and discover whether a change of beneficiary has been procured by forgery, and that where an insurer in good faith pays life-insurance benefits in reliance on a forged change-of-beneficiary request form,
 
 which appears regular in all respects,
 
 the insurer is fully discharged “from all claims under the policy or contract.”
 

 Fortis,
 
 926 So.2d at 989 (emphasis added). Although we decline to follow the lead of the Alabama Supreme Court and impute a good faith requirement on the application of the statute, we agree our statute, like Alabama’s statute, does not impose a duty on the insurer to investigate whether a change of owner or beneficiary has been procured by forgery. We agree with Odette that the statutory language that payment must be “in accordance with the terms of the policy or contract” requires that a change-of-owner or change-of beneficiary request must be in strict compliance with the terms of the policy.
 

 In this case, the policy requires that a change of owner or beneficiary must
 
 *809
 
 be “by written request satisfactory to Guardian [Life].” A factual dispute exists as to whether Guardian Life made changes to the policy and paid the policy proceeds in strict compliance with the policy’s terms. By the policy’s terms, only Odette, as owner of the policy, had the right to change beneficiary or transfer ownership to another person. However, the policy does not specify the procedures for changing a beneficiary. Guardian Life claims that changing a beneficiary is governed by unwritten business policies. These unwritten policies include a policy of trusting its insureds, allowing an insured to request a notice-of-change form, and not requiring notice-of-change forms to be notarized. But, there is a factual inconsistency between an unwritten policy that notarization for a notice-of-change form is not necessary and a written form sent out by Guardian Life that includes a notary certificate. Arguably speaking, the inclusion of a notary certificate on the notice-of-change form creates an inference that notarization meets the policy requirement that a change must be “by written request satisfactory to “Guardian [Life].” The factual inconsistency between unwritten policies and written forms approved for use by Guardian Life can be resolved only by a trier of fact, and not by a judge on a motion for summary judgment.
 

 Because we find that material facts were in dispute and summary judgment should not have been granted for either side, we do not address the issue of whether the application of section 627.428 was unconstitutional in this case.
 

 Reversed and remanded.
 

 WARNER and LEVINE, JJ., concur.
 

 [1]
 

 . The amended complaint had four additional counts revolving around claims of fraud and unjust enrichment against Susan, Babette, and Arielle, but the motions for summary judgment by both sides did not address those claims.
 

 [2]
 

 . Ky.Rev.Stat. § 304.14-260 (1972).
 

 [3]
 

 . Ala.Code § 27-14-24 provides:
 

 Whenever the proceeds of, or payments under, a life or disability insurance policy or annuity contract, heretofore or hereafter issued, become payable in accordance with the terms of such policy or contract, or the
 
 *806
 
 exercise of any right or privilege thereunder, and the insurer makes payment thereof in accordance with the terms of the policy or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract, or by such assignment, as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor; and such payments shall fully discharge the insurer from all claims under the policy or contract, unless, before payment is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such other person claims to be entitled to such payment or some interest in the policy or contract.
 

 [4]
 

 . "Bernice Pinkley” was apparently meant to refer to Bertha Pinkley.
 

 [5]
 

 . Bertha Pinkley conceded on appeal that Alabama’s facility of payment statute affords protection to the insurer in situations where a change of beneficiary designation is obtained by undue influence or from an incompetent policy holder.
 

 [6]
 

 . Justice Lyons in his dissent opined that the majority in
 
 Fortis
 
 in essence rewrote and expanded Alabama’s facility of payment statute by interpreting certain words to include more than the plain language.